MEDFORD WATERS *vs.* THE STATE OF MARYLAND.

*Opinion formed or expressed by a Person offered as a Juror in
a Trial for Murder—Right of Challenge.*

At the empanelling of the jury at the trial of the appellant indicted
for murder, B. was called as a juror, and sworn upon his *voir dire.*
To the question: " Have you formed and expressed an opinion as
to the guilt or innocence of the prisoner at the bar ?" he replied:
" I have." In answer to questions then propounded to him by the
Court, he stated that such opinion was formed solely from what he
had read of the case in the county papers at the time of the com-
mission of the crime, and from mere rumor; and that he did not
know whether said publication and rumor were true or false; that
he resided more than thirty miles from the place of the commission
of the alleged crime ; that he had not conversed with any witness
in the case, nor with any person who claimed to have any knowledge
of the facts of the case, nor with any one who professed to detail to
him any portion of the testimony in the former trial; that he had
no prejudice or bias for or against the prisoner, and he felt confi-
dent that he could give him a fair and impartial trial, according to
the evidence produced upon the stand by the witnesses. HELD :

That the person offered was a competent juror.

The great purpose of the right of challenge, is to secure a fair and
impartial trial, and where the opinion is of such a character as par-
tiality or prejudice may be inferred from it, then of course the
person offered is not a qualified juror.

The opinion which should exclude a juror must be a fixed and delib-
erate one, partaking in fact of the nature of a pre-judgment.

APPEAL from the Circuit Court for Cecil County.

The case is stated in the opinion of the Court.

The cause was argued for the appellee before BARTOL,
C. J., BRENT, MILLER, ALVEY, ROBINSON and IRVING, J., and
submitted for the appellant.

Waters *vs.* The State.

*William S. Evans* and *Hiram McCullough*, for the appellant.

The test of qualification is not a matter purely in the discretion of the Court before which the case may be pending, but is one established by law, and is consonant with usage and custom. But if discretionary, they are bound, in exercising that discretion, to be governed by the rules of reason and law. *Coke's 2nd Inst.*, 56, 298.

"The law attaches the disqualification to the act of forming and expressing the opinion, and does not look beyond to examine the occasion or weigh the evidence on which the opinion is founded." *People vs. Mather*, 4 *Wendell*, 229 ; *Same vs. Bodine*, 1 *Denio*, 281.

Why should there be any distinction as to the ground of opinion, whether formed from rumor, newspaper reports, reports of evidence before coroner's inquest, or from conversation with witnesses or persons professing to be acquainted with the facts and circumstances? The impression is on the mind of the offered juror all the same, and the object of any test is to afford full and ample protection to the accused by securing to him a fair and impartial trial by a jury *free from impressions*, not to subject him to the risk of committing his life and liberty to the keeping of men whose judgments are perverted by prejudice or bias. *Commonwealth vs. Webster*, 5 *Cushing*, 295.

The burden of all the tests adopted in the different Courts of this country and England, is to ascertain whether an *opinion* has been formed. If it is an *opinion*, it disqualifies; if it is a vague impression, it does not. *Burr's Case*, 4 *Causes Celebres*, 467 ; 2 *Wharton's Amer. Crim. Law*, sec. 2999 ; *Sam vs. The State*, 13 *Smedes & Marshall*, 189.

It matters not whether the opinion was formed from newspaper reports or from conversation with some one who professed to detail the facts. The question is, was

the opinion formed? If it was, the offered juror was disqualified, and should have been rejected. To adopt any other test than that which we contend for, (viz., that the disqualification attaches to the forming and expressing of opinion,) would deprive the accused of that protection of life and liberty which the Constitution and law vouchsafe to every citizen.

In former times, newspaper reports were considered much more dangerous to the personal safety and legal rights of persons charged with crime, than the Court in this case appears to have regarded them. *McNally on Evidence,* 667.

*Charles J. M. Gwinn, Attorney-General,* for the appellee.

At common law. the *vicinetum,* from which it was necessary that a juryman should be summoned, was the town, parish or hamlet nearest to the place where the question to be tried originated. 3 *Thomas' Coke, mar. p.* 466. Jurors were taken from such localities, because such persons would have a better and more certain knowledge of the fact to be tried than any other persons could have. 3 *Thomas' Coke, mar. pp.* 464, 465. It is plain, therefore, that by the common law, rightly understood, it could not have been a ground of objection to a juror that he had knowledge of the facts upon which he might as a juror be called upon to decide.

A juror could not have knowledge of the facts involved in a particular controversy, without having *some* opinion with reference to the bearing and effect of such facts. It would seem to follow, therefore, that, at common law, the knowledge of a juror of the facts of the controversy, and the circumstance that the juror had formed an opinion with relation to those facts, would not have disqualified such juror from becoming part of the panel. But although a juror chosen from among those who lived in the very

neighborhood in which the matter in controversy arose, because of his better and more certain knowledge of the facts to be tried, would not have been disqualified at common law, because he had formed an opinion in relation to the facts to be tried, he would have been disqualified if it appeared that his mind was so convinced that the evidence to be given before him would not alter his convictions. Such a man, being a bondman to his prejudices, and without the freedom of mind which a juror should possess, was, at common law, properly disqualified as a juror. His settled pre-judgment was, in fact, a prejudice, amounting to a presumption of ill-will. 2 *Hawk. P. C.,* (8th *Eng. Ed.,*) 578.

It was the general principle that knowledge of the facts of a case, and an opinion in relation to those facts, did not disqualify a juror, which brought the Courts to the opinion that it was no ground of challenge to a juror that he had been upon a former jury, which convicted others upon the same indictment on which the prisoner was prosecuted; the reason for this conclusion being, that every man was tried upon the evidence of his own guilt, without reference to that of his associates. 1 *Chitty's Crim. Law, mar. p.* 543.

The rule was, that, although the juror had knowledge of the facts of the case, and had formed or expressed an opinion in relation to those facts, he was, nevertheless, competent to act as a juror if he remained possessed of such freedom of mind as would enable him to reach an impartial conclusion when he had heard all the evidence in the case.

It is not to be denied that this proper rule has, in many cases, been departed from, and conclusions less well considered adopted in its stead. It has sometimes been held that the mere fact that a juryman had formed an opinion in relation to the merits of the case, would disqualify him, without further inquiry into the nature of that opinion.

It has sometimes been maintained that the mere expression of an opinion as to the merits of a case, would disqualify a juror, without reference to the motives or grounds upon which that opinion has been expressed. These rulings, resting upon the theory that there can be no indifference in judgment where there is knowledge, or where an opinion has been expressed, are, it is believed, as incorrect in principle as they are evil in effect.

In modern communities such particulars of every offence as can be ascertained are at once given to the public. The real or supposed facts of a case become at once known, not only to the people of the vicinage, but to everybody. All who read acquire a knowledge of the facts of the pending case, and all who have any knowledge of the facts of the case have some opinion with regard to its merits.

Service upon a jury empanelled to try a prisoner for an offence punishable with death or imprisonment is an unpleasant duty, and yet it is a duty, upon the proper discharge of which the safety of society depends. A person summoned to perform duty as a juryman ought to be held to the performance of that duty, if he is in a state of mind which will enable him to weigh and determine fairly the evidence which he may hear. To exclude from the jury-box, in modern times, all who have some knowledge of a case, and who have formed or expressed some opinion as to the facts within their knowledge, without further examining the juror, so as to ascertain whether he be really disqualified by any settled belief or conviction, is to exclude from the panel, if the case be important or notorious, the intelligent freemen of the vicinage. It has a tendency to make—oftentimes it does make—the panel a shelter for the criminal. The citizen, called from his private occupations to the performance of the harsh duties of the jury-box, is too often tempted to take advantage of the excuse which he thinks his knowledge of the

case, or his impressions in relation to it, enable him to avail himself of; and the panel is left open to the possible entrance of those who are less disinclined to perform the duty of deciding the particular case.

The impressions in relation to the merits of a case, which will yield to testimony, if it be offered, constitute no sufficient objection to a juror. 1 *Burr's Trial*, 416; *O'Mara vs. Comm.*, 75 *Penn. St.*, 427; *Comm. vs. Webster*, 5 *Cush.*, 297; *State vs. Wilson*, 38 *Conn.*, 129; *Smith vs. Comm.*, 7 *Grattan*, 593; *State vs. Ellington*, 7 *Iredell Law*, 62, 64; *State vs. Lawrence*, 38 *Iowa*, 54; 74 *Penn.*, 460; 23 *Gratt.*, 927; *State vs. Collins*, 70 *N. C.*, 243; *Proffat on Jury Trial*, secs. 186, 187.

ROBINSON, J., delivered the opinion of the Court.

The appellant was indicted for murder, in the Circuit Court for Cecil County.

When the jury was being empanelled in his case, a certain Henry J. Briscoe was called as a juror and sworn upon his *voir dire*. To the question: "Have you formed and expressed an opinion as to the guilt or innocence of the prisoner at the bar?" he replied: "I have." In answer to questions then propounded to him by the Court, he stated, that such opinion was formed, solely from what he had read of the case in the county papers at the time of the commission of the crime, and from mere rumor; and that he did not know whether said publication and rumor were true or false; that he resided more than thirty miles from the place of the commission of the alleged crime; that he had not conversed with any witness in the case, nor with any person who claimed to have any knowledge of the facts of the case, nor with any one who professed to detail to him any portion of the testimony in the former trial; that he had no prejudice or bias for or against the prisoner, and he felt confident that he could give the prisoner a fair and impartial trial according to the evidence produced upon the stand by the witnesses.

The Court thereupon decided, that the said Briscoe was a competent juror; and to this opinion of the Court, the prisoner excepted.

It is a fundamental principle underlying the trial by jury, that each juror shall so far as it is possible be entirely *impartial* and *unbiased*, in order that he may hear the evidence, and decide the matter in controversy uninfluenced by any extraneous considerations whatever. We say, so far as it is possible, for after all, it may not be practicable even by the most rigid rules of exclusion to secure that impartiality which the law in the abstract contemplates.

Every day's experience teaches that all human institutions are affected to some extent at least, by the common infirmities of those by whom they are framed, or by whom they are administered. To secure, however, a fair and impartial trial so far as it may be practicable, the law has from the earliest times prescribed certain qualifications for jurors; and has carefully excluded from the panel all persons who from partiality or prejudice, arising either from their relations to the parties or from a fixed opinion in regard to the matter in issue, cannot be expected to give an impartial consideration to the questions submitted to them.

To this extent all the authorities agree, but in respect to the nature and character of the opinion, and the source or information upon which it is founded, there is to be found the greatest diversity of judicial opinion. We do not propose to consider in detail the many cases to be found on the subject, much less attempt the impossible task of reconciling conflicting opinions.

In some States it has been held that any opinion formed or expressed, without regard to the source or information upon which it is founded, is a sufficient disqualification.

In others the character of the opinion, and the source whence it is derived are most considered, and there it is held that although an opinion formed and expressed from

actual knowledge of the facts or from information derived from those who are witnesses or who had knowledge, is sufficient ground for challenge, yet, that an opinion formed and expressed from mere rumor, or newspaper statements is not sufficient, if the person offered as a juror can say that such opinion, has not created any bias or prejudice for or against the prisoner.

Then again it has been held that the opinion however formed, and from whatever source, must be such as implies partiality for or malice against the party challenging.

If we turn to the common law to which we are indebted for the trial by jury, we find that jurors were taken from the town, parish or hamlet nearest to the place where the questions to be tried originated. 3 *Thomas' Coke*, 466. And they were taken from such localities because they had a better and more certain knowledge of the facts than any other persons could have. 3 *Thomas' Coke*, 464. It is clear therefore, that the mere knowledge of the facts upon which a juror might be called to decide, could not be a ground of objection, and yet he could not have knowledge of the facts without having an opinion of some kind with reference to the hearing and effect of such facts.

It may be questionable then, whether by the ancient authorities the mere formation and expression of opinion was a sufficient ground of challenge, unless the opinion could be referred to some partiality for or prejudice against the party challenging.

So at least it is stated in 2 *Hawkins' Pleas of the Crown*, 575, where it is said that a juror, who "hath declared beforehand, that the party is guilty or will be hanged or the like, it shall be a good cause of challenge, yet it hath been adjudged, that if it shall appear that the juror made such declarations from his knowledge of the cause, and not from out of any ill-will to the party, it is no cause of challenge." And in support of this, the learned author refers to 2 *Roll. Abr.*, 675, and other cases.

It would not be safe however, to follow implicitly these decisions, for they are based in a measure upon the law as it then existed, and which required that jurors should be selected from among those who were supposed to have a knowledge of the facts.

Amid such conflicting opinions, we must be governed after all by the reasons lying at the bottom of this right of challenge. The great purpose of this right is to secure a fair and impartial trial, and where the opinion is of such a character as partiality or prejudice may be inferred from it, then of course the person is not a qualified juror.

Now, in this case, the opinion of the party offered as juror was founded entirely upon rumor and newspaper statements; he did not live in the neighborhood where the alleged offence was committed; had never talked with a witness in the case, nor with any one who claimed to have any knowledge of the case; had no bias for or prejudice against the prisoner, and felt confident he could try the case impartially, according to the evidence. We agree with the Court below, that the person offered was a competent juror. There was no such opinion formed and expressed, no such pre-judgment of the case as to justify a challenge for cause. If such an opinion is to amount to a disqualification, it would be difficult, if not impossible in a criminal case of importance, especially in a case of murder, to find twelve jurors of intelligence and character such as our Statute law requires.

The newspaper is now read by every one, and the press is ever ready and eager to furnish the details of crime. And although persons may upon such statements form an opinion, yet it is one in most of cases liable to qualification or modification, according to the real facts of the case.  .

The juror offered in this case would not have been excluded by the rule laid down in *Burr's Trial*, where Chief Justice MARSHALL said: "The Court has considered those who have deliberately formed and delivered an

opinion on the guilt of the prisoner, as not being in a frame of mind to weigh the testimony, and therefore as being disqualified to sit as jurors in the case." 1 *Burr's Trial*, 367. Nor by the following test recognized by Judge TANEY, in a later case: " If the juror has formed an opinion that the prisoners are guilty, and entertains that opinion now, without waiting to hear the testimony, then he is incompetent. But if from newspapers or hearing reports he has impressions on his mind unfavorable to the prisoners, but has no opinion or prejudice which will prevent him doing impartial justice when he hears the testimony, then he is competent." *Wharton's Criminal Law*, 2981.

It is evident from the views of these eminent jurists, that the opinion which should exclude a juror must be a fixed and deliberate one, partaking in fact of the nature of a pre-judgment.

For these reasons the ruling of the Court below must be affirmed.

*Ruling affirmed, and*
*cause remanded.*

(Decided 17th June, 1879.)