# LAWRENCE LANGLEY *v.* STATE OF MARYLAND

[No. 10, September Term, 1977.]

*Decided November 2, 1977.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Geraldine Kenney Sweeney, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*W. Timothy Finan, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Clarence W. Sharp* and *Gilbert Rosenthal, Assistant Attorneys General,* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

At the trial of this criminal case before a jury in the Circuit Court for Prince George's County a trial judge refused to ask the following question on voir dire:

> "Is there anyone here who would give more credit to the testimony of a police officer over that of a civilian, merely because of his status as a police officer?"

The Court of Special Appeals affirmed the conviction in an unreported opinion. (*Langley v. State,* No. 165, September Term 1976.) We granted the writ of certiorari in order that we might consider the overall problem and any conflict between the holding of the Court of Special Appeals in this case and its holding in *Tisdale v. State,* 30 Md. App. 334, 338-39, 353 A. 2d 653 (1976). We shall hold that under the facts and circumstances here it was prejudicial error for the trial judge to refuse to ask this question.

The facts are relatively simple. Appellant, Lawrence Langley (Langley), was tried and convicted of robbery. Pursuant to Maryland Rule 828 g the parties agreed to a statement of facts in lieu of a printed record extract in this Court. This statement included the following relevant to the alleged crime and the Langley defense: On June 13, 1975, between 1:30 a.m. and 2:00 a.m. a taxicab driver notified the police that his cab had just been stolen. A police officer in Chillum observed the cab in question shortly thereafter and gave chase at a high rate of speed. The cab crashed. The driver fled and has never been apprehended. Langley, a passenger in the cab, was arrested. The officer testified that

Langley was attempting to flee from the scene when he was arrested. His flight was impeded by a jammed door on the passenger side of the cab. The officer further testified that Langley had only three cents on his person at the time of his arrest. This testimony was contradicted by Langley who stated that he was not attempting to flee, that he could have successfully emerged from the cab but chose not to, and that he had $2.00 on his person at the time of his arrest. He claimed that he had left a restaurant in the District of Columbia at closing time, hailed a cab to return to his home in Chillum (intending to use the $2.00 to pay the fare), and, to his surprise, had become involved in a high speed chase and crash. He denied any knowledge of or participation in the robbery which preceded his entry into the cab.[1]

The Court of Special Appeal said it "f[ound] dispositive the decisions of *Gorin v. United States*, 313 F. 2d 641 (1 Cir. 1963), and *Rose v. United States*, 374 F. 2d 97 (8th Cir. 1967), to the effect that such a question does not establish challenge for cause and is therefore not mandated," adding that it "s[aw] no abuse of discretion."

*Tisdale,* 30 Md. App. 334, also involved a case in which the testimony of a police officer was very important, but not so important as in the case here. There on voir dire the prospective jurors were asked:

> "Now, are there any of you here who are inclined or would be inclined to give more weight to a police officer's testimony merely because he is a police officer than the testimony of any other witness in the case?"

Two jurors answered in the affirmative. The trial judge declined to disqualify the jurors for cause, pointing out that each juror had "indicated there's no reason at all that he would not render a fair and impartial verdict based on the evidence." Since the defendant had to use two peremptory challenges to eliminate those jurors, the Court of Special

---

1. The facts as related in the opinion of the Court of Special Appeals included that two men were involved in the robbery. The cab driver was unable to identify Langley as one of his assailants.

Appeals held that "[t]he failure of the trial court to allow [Tisdale] 20 peremptory strikes was reversible error." [2]

Almost a century ago Judge Robinson observed for the Court in *Waters v. State*, 51 Md. 430 (1879):

> "It is a fundamental principle underlying the trial by jury, that each juror shall so far as it is possible be entirely impartial and unbiased, in order that he may hear the evidence, and decide the matter in controversy uninfluenced by any extraneous considerations whatever. We say, so far as it is possible, for after all, it may not be practicable even by the most rigid rules of exclusion to secure that impartiality which the law in the abstract contemplates.
>
> "Every day's experience teaches that all human institutions are affected to some extent at least, by the common infirmities of those by whom they are framed, or by whom they are administered. To secure, however, a fair and impartial trial so far as it may be practicable, the law has from the earliest times prescribed certain qualifications for jurors; and has carefully excluded from the panel all persons who from partiality or prejudice, arising either from their relations to the parties or from a fixed opinion in regard to the matter in issue, cannot be expected to give an impartial consideration to the questions submitted to them." *Id.* at 436.

---

2. Maryland Rule 543 as to civil cases and Rule 746 as to criminal cases (in effect at the time of this trial) continued the prior statutory provisions. In a civil proceeding "[e]ach party may peremptorily strike, without cause, four persons from the lists of twenty provided for in paragraph one of section a of [Rule 543]." Rule 746 provided, "In a trial in which the defendant is subject, on any single count, to a sentence of death, life imprisonment or twenty years or more of imprisonment, except for common law offenses for which no specific penalty is provided by statute, each defendant shall be permitted twenty peremptory challenges . . . ." In other cases each party is permitted four peremptory challenges. We promulgated new criminal rules effective July 1, 1977. Rule 746 has been supplanted by Rule 753 which is applicable "to all proceedings commenced on and after July 1, 1977, and insofar as practicable, to all proceedings then pending . . . ." The number of peremptory challenges remains unchanged.

This Court has observed on a number of occasions that there is no statute in Maryland prescribing the objects of inquiry in determining the eligibility of jurors, and the subject is not covered by rigid rules, but is committed largely to the sound discretion of the trial court in each case. *See, e.g., Casey v. Roman Catholic Arch.,* 217 Md. 595, 605, 143 A. 2d 627 (1958); *Corens v. State,* 185 Md. 561, 564, 45 A. 2d 340 (1946); and *Whittemore v. State,* 151 Md. 309, 314, 134 A. 322 (1926). Judge Hammond explained for the Court in *McGee v. State,* 219 Md. 53, 146 A. 2d 194 (1959):

> "It is settled in Maryland that in examination of jurors on their *voir dire,* the court may frame its own questions and not permit cross-examination by counsel, that the extent of the examination rests in the sound discretion of the court, and that the purpose of the inquiry is to ascertain 'the existence of cause for disqualification and for no other purpose.' *Adams v. State,* 200 Md. 133, 140, and cases cited; *Bryant v. State,* 207 Md. 565. Questions not directed to a specific ground for disqualification but which are speculative, inquisitorial, catechising or 'fishing', asked in aid of deciding on peremptory challenges, may be refused in the discretion of the court, even though it would not have been error to have asked them. *Whittemore v. State,* 151 Md. 309, 311-316; *Handy v. State,* 101 Md. 39; *Gillespie v. State,* 92 Md. 171, 174; *Emery v. F. P. Asher, Jr. & Sons, Inc.,* 196 Md. 1, 6-9; Cf. *Casey v. Roman Catholic Archbishop,* 217 Md. 595, 605." *Id.* at 58-59.

*See also Grogg v. State,* 231 Md. 530, 532, 191 A. 2d 435 (1963); *Giles v. State,* 229 Md. 370, 378, 183 A. 2d 359 (1962); *Casey,* 217 Md. at 605; *Grossfeld v. Braverman,* 203 Md. 498, 500-01, 101 A. 2d 824 (1954); *Adams, Nelson, and Timanus v. State,* 200 Md. 133, 140, 88 A. 2d 556 (1952); and *Cohen v. State,* 173 Md. 216, 224, 195 A. 532 (1937). In *Casey* Judge Horney said for the Court:

> "[P]arties to an action triable before a jury have a *right* to have questions propounded to prospective

jurors on their *voir dire,* which are directed to a specific cause for disqualification, and failure to allow such questions is an abuse of discretion constituting reversible error." *Id.* at 605 (Emphasis in original.)

He there referred to *Bryant v. State,* 207 Md. 565, 115 A. 2d 502 (1955), where Judge Delaplaine said for the Court:

"In the exercise of that discretion, the trial judge should adapt the questions to the needs of each case in the effort to secure an impartial jury. Any circumstances that may reasonably be regarded as rendering a person unfitted for jury service may be made the subject of questions and a challenge for cause. Accordingly an examination of a juror on his *voir dire* is proper as long as it is conducted within the right to discover the juror's state of mind in respect to the matter in hand or any collateral matter reasonably liable to unduly influence him. *Corens v. State,* 185 Md. 561, 564, 45 A. 2d 340; *Grossfeld v. Braverman,* 203 Md. 498, 101 A. 2d 824." *Id.* at 583.

One of the first reported cases we have found ruling upon the question here before the Court is that of *Sellers v. United States,* 271 F. 2d 475 (D. C. Cir. 1959). The appellant there was convicted of violations of narcotics laws "based upon the testimony of an undercover police officer who had befriended him." The court found an abuse of discretion on the part of the trial judge when he declined to make inquiry on voir dire as to whether any of the prospective jurors were "inclined to give more weight to the testimony of a police officer *merely because he [was] a police officer* than any other witness in the case." (Emphasis supplied by the court.) The same court considered the matter again, referring to *Sellers,* in *Brown v. United States,* 338 F. 2d 543 (D.C. Cir. 1964). Judge Burger (now Chief Justice) said for the court in *Brown:*

"The *Gorin* case is, of course, not controlling in this jurisdiction and should not be followed by the

District Court at the expense of our own holding in the *Sellers* case. In the present case, as in *Sellers*, 'virtually the entire case for the prosecution' consisted of testimony from law enforcement officers. The circumstances of the *Sellers* case are very similar and compel reversal here; moreover, we do not read *Sellers* as having been narrowly decided. We construe that case as establishing that when important testimony is anticipated from certain categories of witnesses, whose official or semi-official status is such that a juror might reasonably be more, or less, inclined to credit their testimony, a query as to whether a juror would have such an inclination is not only appropriate but should be given if requested. Failure to make appropriate inquiry, when requested, does not necessarily require reversal; the issue turns on the degree of impact which the testimony in question would be likely to have had on the jury and what part such testimony played in the case as a whole. In this case, at the opening of trial, the Government had announced that it would not be able to produce the complainant, who had left the jurisdiction, but would rely on the testimony of the two military police officers who had witnessed the assault and apprehended appellant. That the two Metropolitan Police Officers were also members of this police category serves only to emphasize the need for the requested inquiry to the panel. Responses to the requested query might have supplied defense counsel, or indeed the prosecutor, with relevant and useful information for exercising peremptory challenges or challenges for cause. We hold that under the *Sellers* case failure to inquire of the jury panel as requested regarding possible predilections concerning police testimony was reversible error in this case. We emphasize that independent of the scope of the requested query, the phrasing of the court's inquiry should include whether any juror

would tend to give either more *or less* credence because of the occupation or category of the prospective witness." *Id.* at 545. (Emphasis in original; footnotes omitted.)

Judge Burger had earlier noted for the court that *Chavez v. United States*, 258 F. 2d 816, 819 (10th Cir. 1958), *cert. denied sub nom. Tenorio v. United States*, 359 U. S. 916 (1959), in dicta had taken an approach similar to that in *Sellers*. The court declined in *Chavez* to reverse, however, because of the omission of the phrase "simply because of his official character." Later in *United States v. Brewer*, 427 F. 2d 409, 410 (10th Cir. 1970), although the court "conclude[d] that the [trial] court adequately tested the qualifications and competency of the jurors," it reiterated its statement "that it is a proper subject of voir dire to ask whether jurors would give greater or less weight to anticipated testimony of a law enforcement officer than to that of another witness simply because of the officer's official character."

*United States v. Martin*, 507 F. 2d 428 (7th Cir. 1974), concerned a conviction for failure of an employer to file quarterly tax returns. The trial court declined to ask on voir dire whether a juror "fe[lt] that because a witness [was] a Government Agent that his testimony [was] therefore entitled to more weight than one who [was] not an agent." The court said:

"Of the four witnesses called by the United States, three were employees of government agencies. Thus, it was particularly important for the defendant to know of any prejudices the jurors may have had about the Government or about the credibility of government agents. Specifically, we think question 9 concerning the weight that would be given a government agent's testimony was particularly important. See Chavez v. United States, 258 F.2d 816, 819 (10th Cir. 1958). The Government argues that the trial judge, in effect, asked this question, since he told the entire jury

panel at the start of the voir dire examination that they were not to consider whether a witness was a government employee for purposes of determining credibility; later he asked each juror about his ability to be impartial. Mere admonitions, however, are not enough. The sole purpose of voir dire is not to tell potential jurors that they are to be fair and then ask them if they think they can be impartial. The defendant's proposed questions were meant to elicit specific attitudes and prejudices. We cannot assume that a juror would state that he could not be impartial merely because he had a close relationship with the government or a high regard for the credibility of government agents. Such questions should have been asked directly." *Id.* at 432-33.

The Fourth Circuit specifically "approve[d] the rule stated in *Brown*, 338 F. 2d at 545" in *United States v. Gore*, 435 F. 2d 1110, 1113 (1970), although it found "from the vantage point of hindsight, it appear[ed] no error was committed."

One of the more recent state court opinions on the subject is that of our neighbor to the north in *Commonwealth v. Futch*, 469 Pa. 422, 366 A. 2d 246 (1976). The Supreme Court of Pennsylvania referred to *Brown* in the process of deciding that a trial court erred in declining to ask prospective jurors whether they "[w]ould ... give more credence to the testimony of a prison guard than [they] would to a prisoner, simply because he is a prison guard." The court said:

"The crux of the case at bar is the credibility of the prison guards' testimony contrasted to the credibility of the prison inmates' testimony. On these facts a juror who would believe the testimony of a prison guard simply because of his official status would be subject to disqualification for cause. Appellant has a right to probe for this bias since it bears on a juror's objectivity with respect to

the most critical aspect of the case. See *United States v. Napoleone*, 349 F. 2d 350 (3d Cir. 1965).

\* \* \*

"The rationale underlying *Brown v. United States*, supra, is that although it is likely that jurors might believe testimony of law enforcement officials solely by virtue of the group's official status, it is unreasonable for them to do so because official status is no guarantee of trustworthiness. With regard to prison inmates, it is just as likely that jurors might attach less credit to their testimony, and it is just as unreasonable for them to do so because prior criminal activity is not necessarily a reliable indicator of untrustworthiness. On the facts of this case a juror who would disbelieve the testimony of a prison inmate simply because of his status as a prison inmate would be subject to disqualification for cause." *Id.* at 249-50. (Footnotes omitted.)

As one might surmise from the holding of the Court of Special Appeals, there are cases which have reached a result contrary to those we have cited and quoted. *See, e.g., United States v. Gassaway*, 456 F. 2d 624, 626 (5th Cir. 1972), and *Commonwealth v. Walker*, 350 N.E.2d 678, 695 (Mass. 1976). Although the Court of Special Appeals found "dispositive the decisions of *Gorin v. United States*, 313 F. 2d 641 (1 Cir. 1963), and *Ross v. United States*, 374 F. 2d 97 (8th Cir. 1967)," we regard neither case as apposite.

In *Brown* Judge Burger said in a footnote, "In *Gorin*, *supra*, the proposed question did not include the phrase 'merely because he is a government agent.' "

The precise question sought to be asked does not appear in *Ross*. From the opinion we glean, however, that the court's decision was based upon harmless error rather than on the question of whether it was an abuse of discretion to refuse to propound such a question. The court said:

"In the present case only one investigating officer appeared as a witness. There were 13 other

witnesses for the prosecution. The officer sat at the counsel table with the government attorneys. He was the agent who took the defendant's statement which was introduced without objection from the defense. His testimony was concerned mainly with that statement. The prosecution, in its argument to the jury, made no reference to this agent-witness. While the court might properly have made the inquiry, we find, under these circumstances, no prejudice in its failure to make it. It is apparent, we think, that even under the more rigid District of Columbia approach the failure, on this record, would not be held to be reversible error." *Id.* at 105.

Insofar as this particular type of question is concerned, we write on a clean slate. In *Waters v. State*, 51 Md. 430, the Court was concerned with a witness who answered affirmatively to a question as to whether he had "formed and expressed an opinion as to the guilt or innocence of the prisoner at the bar." It developed

"that such opinion was formed, solely from what he had read of the case in the county papers at the time of the commission of the crime, and from mere rumor; and that he did not know whether said publication and rumor were true or false; that he resided more than thirty miles from the place of the commission of the alleged crime; that he had not coversed with any witness in the case, nor with any person who claimed to have any knowledge of the facts of the case, nor with any one who professed to detail to him any portion of the testimony in the former trial; that he had no prejudice or bias for or against the prisoner, and he felt confident that he could give the prisoner a fair and impartial trial according to the evidence produced upon the stand by the witnesses." *Id.* at 435.

It should be noted that *Waters* concerned a rural county and was decided long before the day of television and radio. The conclusion of the Court there as to the basis for exclusion or

disqualification of a juror is enlightening in the context of this case:

> "The juror offered in this case would not have been excluded by the rule laid down in *Burr's Trial*, where Chief Justice Marshall said: 'The court has considered those who have deliberately formed and delivered an opinion on the guilt of the prisoner, as not being in a frame of mind to weigh the testimony, and therefore as being disqualified to sit as jurors in the case.' 1 Burr's Trial, 367. Nor by the following test recognized by Judge Taney, in a later case: 'If the juror has formed an opinion that the prisoners are guilty, and entertains that opinion now, without waiting to hear the testimony, then he is incompetent. But if from newspapers or hearing reports he has impressions on his mind unfavorable to the prisoners, but has no opinion or prejudice which will prevent him doing impartial justice when he hears the testimony, then he is competent.' Wharton's Crim. Law, 2981.

> "It is evident from the views of these eminent jurists, that the opinion which should exclude a juror must be a fixed and deliberate one, partaking in fact of the nature of a pre-judgment." *Id.* at 438-39.

A juror who states on voir dire that he would give more credit to the testimony of police officers than to other persons has prejudged an issue of credibility in the case. Regardless of his efforts to be impartial, a part of his method for resolving controverted issues will be to give greater weight to the version of the prosecution, largely because of the official status of the witness. The argument by the State that police officers are entitled to greater credibility because they have less interest in the outcome of the case is not sufficient to overcome such an objection.

As Judge Horney pointed out for the Court in *Casey v. Roman Catholic Arch.*, 217 Md. 595, 607, "a party is entitled to a jury free of all disqualifying bias or prejudice without exception, and not merely a jury free of bias or prejudice of a

general or abstract nature." Accordingly, we hold that in a case such as this, where a principal part of the State's evidence is testimony of a police officer diametrically opposed to that of a defendant, it is prejudicial error to fail to propound a question such as that requested in this case. However, in the words of *Brown*, we suggest that "the phrasing of the court's inquiry should include whether any juror would tend to give either more *or less* credence [merely] because of the occupation or category of the prospective witness." (Emphasis in *Brown.*)

*Judgment reversed; case remanded to the Court of Special Appeals for passage of an order reversing the judgment of the Circuit Court for Prince George's County and remanding the case to that court for a new trial; Prince George's County to pay the costs.*