*Ukeenan Nautica Thomas v. State*, Misc. No. 25, September Term 2016. Opinion by Hotten, J.

**CERTIFIED QUESTION OF LAW — VOIR DIRE — MANDATORY QUESTION — POLICE-WITNESS QUESTION**

The Court of Appeals answered the Court of Special Appeals' reformulated certified question in the negative, and determined that a trial judge is required to tailor the occupational bias question, discussed in *Moore v. State*, 412 Md. 635, 989 A.2d 1150 (2010), to the specific occupation of the witnesses anticipated to testify in the case. *See Moore*, 412 Md. at 654-55, 989 A.2d at 1161.

Circuit Court for Baltimore County
Case No. 03K14005479
Argued: May 4, 2017

IN THE COURT OF APPEALS

OF MARYLAND

Misc. No. 25

September Term, 2016

_____

UKEENAN NAUTICA THOMAS

v.

STATE OF MARYLAND

_____

Barbera, C.J.,
Greene,
Adkins,
McDonald,
Watts,
Hotten,
Getty,

JJ.

_____

Opinion by Hotten, J.

_____

Filed: July 28, 2017

We consider whether a trial judge may pose a broad occupational bias voir dire question when the parties requested that the trial judge inquire as to whether the venirepersons would give undue weight to the testimony of a police-witness, based on the police witness' occupation as a police officer.

On September 14, 2014, Ukeenan Nautica Thomas ("Appellant")[1] invited Timothy Butler ("Mr. Butler") to meet him in order to purchase drugs from him. Following that meeting, Mr. Butler was subsequently robbed, struck in the head with a gun, and his cellphone, bus pass, and cash were stolen. Mr. Butler's assailants were subsequently identified as Appellant and Derrick Johnson ("Mr. Johnson"). Appellant was arrested and charged with multiple offenses, including robbery with a dangerous and deadly weapon, use of a handgun in a crime of violence, and conspiracy to commit robbery.

During voir dire, counsel for both parties requested that the trial judge ask the venirepersons whether they would give undue weight to a police-witness's testimony based on his or her occupation, because two police officers and a detective were anticipated to testify in the case. Rather than propound the police-witness question as requested, the trial judge posed a lengthy question that was not specifically tailored to the occupation of the witnesses testifying in Appellant's case. Appellant was subsequently convicted by a jury of robbery with a dangerous and deadly weapon, use of a handgun in a crime of violence, and conspiracy to commit robbery. Appellant was sentenced to forty years' incarceration,

---

[1] Because the question presented is a certified question from the Court of Special Appeals, we will refer to Mr. Thomas as "Appellant" rather than "Petitioner" for the purposes of this opinion.

with all but thirty years suspended, and five years of supervised probation. Appellant appealed his convictions to the Court of Special Appeals. After canceling oral argument, the Court of Special Appeals filed a certified question of law with this Court, which we reformulated to ask whether a broader occupational bias question posed during voir dire was appropriate in determining whether potential jurors would give undue weight to a police officer's testimony, based on his or her position as a police officer, when a more specific police-witness question was requested by Appellant's counsel..

For the reasons that follow, we answer the reformulated certified question in the negative.

## BACKGROUND

### I. Underlying Criminal Proceedings

Because the issue dispositive of this appeal does not require a detailed recitation of the facts, we include only a brief summary of the underlying evidence that was established at trial. The record reflects that on September 14, 2014, Appellant invited Mr. Butler to meet him in Owings Mills so that Appellant could purchase drugs. After meeting with Appellant, Mr. Butler was subsequently robbed by multiple individuals who struck Mr. Butler in the head with a gun, and took his cell phone, bus pass, and cash. Upon investigation, the police identified Appellant and Mr. Johnson as the individuals who robbed Mr. Butler.[2] The State charged Appellant with: (1) robbery with a dangerous and

---

[2] The record reflects that when Mr. Butler was interviewed by police immediately after the robbery, he identified one of his attackers by the name "Keenan." The police subsequently showed Mr. Butler a photo of Appellant, and Mr. Butler identified the person

(continued . . .)

2

deadly weapon, (2) use of a handgun in a crime of violence, (3) robbery, (4) first-degree assault, (5) theft of less than $1,000, (6) conspiracy to commit robbery, and (7) conspiracy to commit robbery with a dangerous and deadly weapon.

On May 21, 2015, following a two-day trial, Appellant was convicted by a jury in the Circuit Court for Baltimore County of robbery with a dangerous and deadly weapon, use of a handgun in a crime of violence, and conspiracy to commit robbery. Appellant was acquitted of the conspiracy to commit armed robbery charge, and the charge of theft of less than $1,000 was entered *nolle prosequi*. The remaining charges were merged for sentencing purposes. Appellant was sentenced to forty years of incarceration with all but thirty years suspended, and to an additional five years of probation.

## II.    Voir Dire

Prior to trial, both parties requested that the trial judge ask the venire what we will refer to as the police-witness question. Appellant's counsel phrased the police-witness question in his written request for voir dire as follows:[3]

---

(. . . continued)

in the photo as "Keenan." Mr. Butler also identified Mr. Johnson in a photo array as the man who hit him with the gun. Mr. Johnson subsequently pled guilty to the armed robbery of Mr. Butler and was sentenced to fifteen years' imprisonment with all but three years suspended and three years' supervised probation.

[3] The State phrased the question as follows:

9. You are instructed that a police officer's testimony should be considered by you just as any other evidence in this case, and in evaluating his credibility, you should use the same guidelines which you apply to the testimony of any other witnesses.

(continued . . . )

If you are selected as a juror in the case you may hear the testimony of one or more law enforcement officers. Do any of you believe that a law enforcement officer's testimony is entitled to greater weight than any other witness just because he is a law enforcement officer?

Rather than pose the question as provided by Appellant's counsel, the trial judge instead engaged in the following monologue:

Another principle of law about which the jury will be instructed is what we call credibility of witnesses. In all jury trials, whether it's civil or criminal, the judge decides issues of law, but the jury decides issues of fact. In that regard, based on testimony and other admissible evidence, the jury decides what evidence they find persuasive. My instructions will include some factors that you may consider in judging witness credibility. Ultimately, if selected as a juror in this case, it will be for you to decide who you believe. That is to say, who is right or wrong, who is truthful or untruthful or who is correct or mistaken. At the conclusion of the case and during deliberations, the jury will have had the benefit of listening to and observing each witness, viewing all the other evidence presented and discussing the evidence with your fellow jurors. Mindful of that principle, are there any prospective jurors who would automatically give more or less weight to the testimony of any witness merely because of the witness' title, profession, education, occupation or employment? Now, that's a long question and it's asked in a vacuum. To start with, we want jurors who don't know anything about this case. But let me see if I can give you an example of what I'm talking about. If anyone here is a physician, I'm not picking on you. We have two physicians. And I pick physicians because they're similarly trained. They went to grade school. High school. College. Medical school. So, they're very – they have similar characteristics. They're having lunch one day. They walk out of lunch. They're walking down the street. They're chit-chatting, chit-chatting about whatever doctors chit-chat about and there's an accident that happens in front of them. One of the physicians saw it and thought the light

_____

(. . . continued)

In no event should you give any greater or lesser credence to the testimony of any witness merely because he [or she] is a police officer.

Does any prospective juror feel that he/she cannot follow this instruction, and would give the testimony of a police officer greater weight than any other witnesses merely because he/she is a police officer?

\*　　\*　　\*

4

was green and the other physician thought the light was red. And if that's all you had, and you were asked to make a decision, how would you decide? Well, most people would say, well, I gotta hear all the facts from everybody. And that's kind of the point of this question. So, stated another way, if you were selected as a juror in this case, would you be able to judge the credibility of each witness' testimony based on their testimony, rather than merely relying on his or her title, profession, education, occupation, or employment? For example, would any of you automatically give more or less weight to the testimony of a physician, a clergyman, a firefighter, a police officer, psychiatrist, social worker, electrician or any other witness merely because of their title, profession, education, occupation or employment? If so, please stand.

\*     \*     \*

None of the venirepersons responded to the question. After the trial judge completed his questioning, Appellant's counsel took exception to how the trial judge phrased the police-witness question and the following exchange ensued:

[APPELLANT'S COUNSEL]: Yes, Your Honor. I'd ask that you give my number 15[4] as written rather than classify the police with pharmacists and firemen, none of which are gonna testify. The issue is whether or not a juror will give more weight particularly to a uniformed police officer, or person identifying themselves as a police officer, as opposed to any other witness. So, putting them in a category with 12, or 5 or 6, other people, I don't think covers what [*Bowie v. State*, 324 Md. 1, 595 A.2d 448 (1991)], which is the state that I – case that I cited intends.
\*     \*     \*

[THE COURT]: Okay. Well, come in a little closer, [Prosecutor]. What evidence will be presented by the police in this case? Because I'm, I'm – I am aware of Judge Watts' opinion in [*Pearson v. State*, 437 Md. 350, 86 A.3d 1232 (2014)]. And in Savante (phonetic.), [*Pearson*], she said that, that that question doesn't even have to be asked unless there's evidence in the case. And I think I've complied with [*Pearson*] anyway. But she said that question doesn't even have

---

[4] Number 15 refers to the voir dire question that Appellant's counsel submitted to the trial judge requesting the police-witness question described *supra*.

5

to be asked unless there is going to be substantial – and I'm using the term loosely – substantial evidence derived from the police department. So, what evidence is the, the State gonna introduce in terms of police officer testimony?

[PROSECUTOR]: There is no confession – no statement from the [Appellant], so I – I mean, other than the search of the area where they uncover evidence, other than the issue of them stopping the cab that the Defendant was in, other than that, – I, I mean, this was typical follow-up by police officers. But again, I don't think that there's going to be a question of credibility between the other police officers, and the police (inaudible) to the [Appellant].

[THE COURT]: Okay. Well, [Appellant's Counsel], I'm, I'm, I'm gonna decline to ask the question the – specifically the way you presented it. I think that the Court has fairly covered the, the issues that have been addressed in [*Thomas v. State*, 139 Md. App. 188 (2001)], and [*Davis v. State*, 333 Md. 27 (1993)] going back, and, and [*Pearson*]. Quite frankly, if, if I read [*Pearson*] correctly, I don't even have to ask these people whether they've been victims of crime. I do that out of an abundance of caution, but I don't think it's required. So, I think the Court has fairly covered your questions and I think your objections are noted for the record.

\* \* \*

After the trial judge ruled on Appellant counsel's exceptions, the trial judge brought the venirepersons who had responded affirmatively to the bench to discuss their responses and then empaneled a jury, which subsequently convicted Appellant of the crimes discussed, *supra*.

### III. Proceedings in the Court of Special Appeals

Appellant filed a timely notice of appeal of his convictions to the Court of Special Appeals. The Court of Special Appeals scheduled oral argument for December 6, 2016, but canceled it that morning. On December 27, 2016, then Chief Judge Krauser of that

6

Court filed a certified question of law to this Court pursuant to Maryland Rule 8-304.[5] On January 19, 2017, we issued an order granting *certiorari* on the Court's certified question. Pursuant to Courts & Judicial Proceedings Article ("Cts. & Jud. Proc.") §12-604,[6] we rephrase the certified question to ask:[7]

---

[5] Maryland Rule 8-304 states:

(a) **Initiation.** At any time before issuance of a mandate, the Court of Special Appeals or the panel of that Court to which the action has been assigned may certify a question of law or the entire action to the Court of Appeals. Upon transmission to the Court of Appeals, a copy of the certification shall be forwarded to the Chief Judge of the Court of Special Appeals and to the parties. The Court of Appeals may consider the certification pursuant to its authority to issue a writ of certiorari on its own motion.

(b) **Content.** The certification shall briefly describe the action, state the question of law and the facts on which the question arises, and state the reason for certification.

(c) **Disposition of Certification.** The Court of Appeals may refuse the certification or may issue a writ of certiorari that (1) accepts the certification as submitted, (2) modifies the questions of law certified, (3) includes the entire action although only a question of law was certified, or (4) limits review to only a question of law although the entire action was certified. The Clerk of the Court of Appeals shall send the order refusing the certification or the writ of certiorari to the Court of Special Appeals and to the parties.

(d) **Record Extract and Briefs.** If the Court of Appeals issues a writ of certiorari, the filing of a record extract and briefs shall be governed by [Maryland] Rules 8-501 through 8-511 unless the Court orders otherwise.

[6] Cts. & Jud. Proc. §12-604 states "[t]he Court of Appeals of this State may reformulate a question of law certified to it."

[7] The original certified question posed by the Court of Special Appeals asks:

Did the circuit court err in declining to ask prospective jurors trial counsel's proposed voir dire question as to whether prospective jurors would give

(continued . . . )

7

Whether a broader occupational bias question posed during voir dire is appropriate in determining whether potential jurors would give undue weight to a police officer's testimony, based on his or her position as a police officer, when a more specific police-witness question was requested by Appellant's counsel?

For the reasons that follow, we answer the reformulated certified question in the negative.

**STANDARD OF REVIEW**

It is well-settled that a trial judge has broad discretion in the conduct of voir dire, especially regarding the scope and form of the questions propounded, and that he or she need not make any particular inquiry of the prospective jurors unless that inquiry is directed toward revealing cause for disqualification. *Dingle v. State*, 361 Md. 1, 13-14, 759 A.2d 819, 826 (2000). Because trial judges retain wide discretion regarding the voir dire process, we review a trial judge's decisions during voir dire under an abuse of discretion standard. *See Pearson v. State*, 437 Md. 350, 356, 86 A.3d 1232, 1236 (2014) (quoting *Washington v. State*, 425 Md. 306, 314, 40 A.3d 1017, 1021 (2012)).

We have previously held that "an examination of a juror on his [or her] voir dire is proper as long as it is conducted within the right to discover the juror's state of mind in respect to the matter in hand or any collateral matter reasonably liable to unduly influence

---

(. . . continued)

greater weight to the testimony of a police officer based on the officer's occupation and, instead, asked whether the prospective jurors would "give more or less weight to the testimony of a physician, a clergyman, a firefighter, a police officer, psychiatrist, social worker, electrician or any other witness merely because of their title, profession, education, occupation or employment?

8

him [or her]." *Langley v. State*, 281 Md. 337, 342, 378 A.2d 1338, 1340 (1977) (citations omitted). We have also made clear, however, that

> parties to an action triable before a jury have a right to have questions propounded to prospective jurors on their *voir dire*, which are directed to a specific cause for disqualification, and failure to allow such questions is an abuse of discretion constituting reversible error.

*Moore v. State*, 412 Md. 635, 646, 989 A.2d 1150, 1156 (2010) (quoting *Langley*, 281 Md. at 341-42, 378 A.2d at 1340). There are two categories of specific cause for disqualification: "(1) a statute disqualifies a prospective juror; or (2) a 'collateral matter [is] reasonably liable to have undue influence over' a prospective juror." *Pearson*, 437 Md. at 357, 86 A.3d at 1236 (quoting *Washington*, 425 Md. at 313, 40 A.3d at 1021).

In *Langley*, we determined that the police-witness question is "directed to a specific cause for disqualification" and is required to be asked by a trial judge if requested because

> A juror who states on [*voir dire*] that he would give more credit to the testimony of police officers than to other persons has prejudged an issue of credibility in the case. Regardless of his efforts to be impartial, a part of his method for resolving controverted issues will be to give greater weight to the version of the prosecution, largely because of the official status of the witness.
>
>        \*       \*       \*
>
> As Judge Horney pointed out for the court in *Casey v. Roman Catholic Arch.*, 217 Md. 595, 607, 143 A.2d 627 [(1958)], 'a party is entitled to a jury free of all disqualifying bias or prejudice without exception, and not merely a jury free of bias or prejudice of a general or abstract nature.'
>
>        \*       \*       \*

*Langley*, 281 Md. at 348-49, 378 A.2d at 1343-44 (quoting *Casey*, 217 Md. at 607, 143 A.2d at 632); *see also Bowie v. State*, 324 Md. 1, 8-9, 595 A.2d 448, 451 (1991) (holding that *Langley* is dispositive). Accordingly, if police-witnesses are anticipated to testify in a

criminal case, it is an abuse of discretion for a trial judge to fail to propound the police-witness question when requested by a party to the action. *See Langley*, 281 Md. at 338, 349, 378 A.2d at 1338, 1344 (holding that it was prejudicial error for the trial judge to have failed to ask the venire whether "there is anyone here who would give more credit to the testimony of a police officer over that of a civilian merely because of his status as a police officer?").

## DISCUSSION

The parties agree that when requested by a party, a trial judge is required to ask the police-witness question during voir dire. *See Bowie*, 324 Md. at 8-11, 595 A.2d at 451-52; *Langley*, 281 Md. at 348, 378 A.2d at 1343. The parties disagree, however, on whether the question posed by the trial judge in the instant case was sufficient to satisfy the purpose and spirit of the question – to identify a juror's predisposition to give a police officer's testimony greater or lesser weight than that of another witness due to his or her position as a police officer. *See Langley*, 281 Md. at 348, 378 A.2d at 1343.

Appellant argues that the trial judge posed a lengthy, convoluted inquiry that consisted of 450 words and was 30 sentences long, which obfuscated the police-witness question, thereby evading the spirit of the required inquiry and serving no legitimate purpose. In support of this view, Appellant analogizes the case at bar to our decision in *Wright v. State*, 411 Md. 503, 983 A.2d 519 (2009), where we held that the trial court abused its discretion when it asked the venire seventeen questions in a row before requesting their individual responses. *Wright*, 411 Md. at 509-11, 515, 983 A.2d at 522-24, 526. Appellant also relies on our decision in *Dingle*, where we determined that a trial

judge abused his discretion by asking the venire compound questions that shifted the responsibility of determining bias from the judge to the venirepersons and deprived the defendant of an opportunity to challenge jurors for cause. *Dingle*, 361 Md. at 21, 759 A.2d at 830. Appellant avers that the rationale underlying our decisions in these two cases was that potential jurors should not be asked questions during voir dire in an indigestible fashion. Here, Appellant argues that the trial judge's question was unduly long, confusing, and difficult for the venire to follow.

In contrast, the State argues the question posed by the trial judge followed a clear structure beginning with an explanation of the concept of witness credibility and occupational bias, then providing an illustration that sought to demonstrate the mechanics of occupational bias in determining whether to believe a witness, and concluding the inquiry with the police-witness/occupational bias question. The State avers that because "police officer" was contained in the question portion of the trial judge's inquiry, the question "sufficiently indicated" to the venire what possible bias or prejudice was being probed. The State contends that the trial judge's decision to include other occupations in the inquiry does not mean the venire did not appreciate that they should respond if they would give the testimony of a police officer more or less weight solely due to his or her occupation. The State also distinguishes the facts in the present case from *Wright* by noting this case only deals with a single topic of inquiry; whereas, *Wright* addressed the challenge of comprehending seventeen consecutive voir dire questions. *See Wright*, 411 Md. at 509-11, 515, 983 A.2d at 522-24, 526. The State also differentiates *Dingle* by noting that in this case the question posed by the trial judge did not seek to shift the bias determination

11

from the trial judge to the prospective jurors, unlike the compound voir dire questions posed in *Dingle*. 361 Md. at 21, 759 A.2d at 830.

We have previously described voir dire as "the process by which prospective jurors are examined to determine whether cause for disqualification exists" and that the "overarching purpose of voir dire in a criminal case is to ensure a fair and impartial jury." *Dingle*, 361 Md. at 9, 759 A.2d at 823 (citations omitted). In determining whether a "cause for disqualification[]" exists, we have also held that "the questions should focus on issues particular to the defendant's case so that biases directly related to the crime, the witnesses, or the defendant may be uncovered." *Id.* at 10, 759 A.2d at 824; *see also Washington*, 425 Md. at 313, 40 A.3d at 1021 (quoting same); *State v. Shim*, 418 Md. 37, 52, 12 A.3d 671, 679 (2011) (observing that "a proposed voir dire question must be aimed at uncovering biases *directly related* to the crime, the witnesses, or the defendant.") (citing *Curtin v. State*, 393 Md. 593, 903 A.2d 922 (2006) (emphasis in original). We acknowledge that "[v]oir dire is not a foolproof process, and we do not require perfection in its exercise[,]" but we do require "a comprehensive, systematic inquiry that is reasonably calculated, in both form and substance, to elicit all relevant information from prospective jurors." *Wright*, 411 Md. at 514, 983 A.2d at 525. "[T]he standard is whether the questions posed and the procedures employed have created a reasonable assurance that prejudice would be discovered if present." *Stewart v. State*, 399 Md. 146, 159, 923 A.2d 44, 51-52 (2007) (quoting *White v. State*, 374 Md. 232, 242, 821 A.2d 459, 464 (2003)).

As Appellant notes, the trial judge's inquiry consisted of 450 words and was more than 30 sentences long, in direct contrast to the requested question submitted by

12

Appellant's counsel, which was a single, concise sentence comprising of a total of 50 words. The trial judge's inquiry also stands in stark contrast to the Maryland State Bar Association's ("MSBA") model voir dire question, which contains 22 words, and asks, "[w]ould you tend to believe or disbelieve the testimony of a law enforcement officer more than the testimony of any other witness?" MARYLAND STATE BAR ASS'N, MODEL JURY SELECTION QUESTIONS FOR CRIMINAL TRIALS, 1, 11, http://perma.cc/A8Y7-QJWH. Although relevant to our inquiry, the length of the trial judge's question, by itself, is not dispositive of whether the judge abused his or her discretion. As noted, *supra*, we give the trial court broad discretion in determining the scope and the form in which the voir dire questions are propounded, and the length of an inquiry, alone, does not satisfy the high bar necessary to show an abuse of discretion. Rather, our review focuses on the substance of the trial judge's inquiry, and whether the question posed by the trial judge properly focused on the "issues particular to [Appellant's] case" and was "reasonably calculated, in both form and substance, to elicit" the potential biases the venirepersons may hold regarding police officer testimony. *See Dingle,* 361 Md. at 10, 759 A.2d at 824; *Wright*, 411 Md. at 514, 983 A.2d at 525.

Although Appellant attempts to analogize *Wright* and *Dingle* to the case at bar, we conclude that both cases are factually distinguishable. In *Wright*, we determined that "[t]he presentation of a lengthy roster of questions to the venire, without providing the opportunity to answer each question as it was posed, required each venireperson to comprehend and retain far too much information to guarantee that the questions were

13

answered properly." *Wright*, 411 Md. at 509, 983 A.2d at 522. After quoting the trial

judge's seventeen-question inquiry, we observed that

> the voir dire comprised five and a half minutes of continuous questioning,
> without pause, after which each venireperson was called to the bench one at
> a time. This process resulted in substantial delay between presentation of the
> questions and the answers. Of the twelve jury members ultimately seated,
> four approached the bench more than thirty minutes after the voir dire
> questions had been read; the last of these approached more than fifty minutes
> after the reading.

*Id.* at 511-12, 983 A.2d at 524. We noted that "[w]hile we have every confidence in our

jurors' abilities to respond intelligently and effectively to inquiries posed during voir dire,

we are also duty-bound to eliminate any doubt or error in the process, inasmuch as

possible." *Id.* at 512, 983 A.2d at 524. Ultimately, we concluded that

> it is the multiplicity of the questions that is problematic, not the means by
> which the questions were broadcast. The key to an effective voir dire is
> allowing venirepersons the meaningful opportunity to digest the individual
> questions posed to them and to respond fully to each one while the question
> is at the forefront of their minds.

*Id.* at 514, 983 A.2d at 525. In the present case, rather than considering the "multiplicity

of the questions" asked by the trial judge, we are solely tasked with determining whether

it is appropriate for a trial judge to ask a broader occupational bias question to determine

whether potential jurors would give undue weight to a police officer's testimony, based on

his or her position as a police officer – a single inquiry. The factual circumstances

underlying our decision in *Wright* are, therefore, distinguishable from the case at bar.

In *Dingle*, we examined whether the trial judge abused his discretion in asking the

venire compound questions that required them to reflect on whether their individual biases

would impact their ability to judge the trial fairly before responding to the trial judge's

14

inquiry. *Dingle*, 361 Md. at 4-5, 759 A.2d at 820-21. To illustrate the style of the trial judge's inquiry, we noted he posed, *inter alia*, the following question to the venire:

> Again, a number of two-part questions, ladies and gentlemen. Only stand if your answer is yes to both parts of the question. Have you or any family member or close personal friend ever been a victim of a crime, and if your answer to that part of the question is yes, would that fact interfere with your ability to be fair and impartial in this case in which the state alleges that the defendants have committed a crime?

*Id.* at 5, 759 A.2d at 821. We concluded that because the trial judge "determines the content and scope of the questions on voir dire[]" and how voir dire will be conducted, it follows "that it is the trial judge that must decide whether, and when, cause for disqualification exists for any particular venire person. That is not a position occupied, or a decision to be made, by either the venire or the individual venire persons." *Id.* at 14-15, 759 A.2d at 826. We determined that since the trial judge is the focal point of the voir dire process, his or her "predominant function in determining juror bias involves credibility findings" and that for voir dire to be meaningful, it "must uncover more than 'the jurors' bottom line conclusions [to broad questions], which do not in themselves reveal automatically disqualifying biases as to their ability to fairly and accurately decide the case, and, indeed, which do not elucidate the bases for those conclusions[.]" *Id.* at 15, 759 A.2d at 826 (citations omitted).

We determined that the trial judge in *Dingle* failed to appreciate that, upon a challenge, he had the responsibility to decide – based on the circumstances then existing – "whether any of the venire persons occupying the questioned status or having the questioned experience should be discharged for cause, or whether 'a demonstrably strong

15

correlation [exists] between the status [or experience] in question and a mental state that gives rise to cause for disqualification.'" *Id.* at 17, 759 A.2d at 828 (citations omitted). We held that

> [b]ecause [the trial judge] did not require an answer to be given to the question as to the existence of the status or experience unless accompanied by a statement of partiality, the trial judge was precluded from discharging his responsibility, *i.e.* exercising discretion and, at the same time, the petitioner was denied the opportunity to discover and challenge venire persons who might be biased.

*Id.* As the State argues, Appellant is not alleging that the trial judge failed to discharge his responsibility of assessing venirepersons' response to the police-witness question for potential biases, which was the basis for our decision in *Dingle*. Rather, Appellant is arguing that the trial judge abused his discretion relative to the manner in which the question was posed. Thus, our decision in *Dingle* is also distinguishable from the case at bar.

The thrust of the State's argument is that it was not an abuse of discretion for the trial judge to ask the police-witness question within the broader framework of the occupational bias question we discussed in *Moore*. In *Moore*, we expanded our holding in *Langley*, concluding that

> it is apparent that the *Langley* Court, from the outset, understood that, although it was addressing police officer credibility and, thus, some of the cases were not directly on point, the underlying issue of prejudgment encompassed more than police officers, that many more occupations and categories potentially were implicated.
>
> *        *        *
>
> The principles prescribed and enunciated by *Langley* and embodied in its holding cannot be, as we have seen, so narrowly interpreted or applied to

16

> police officers. At its core, the *Langley* Court's holding is that it is grounds for disqualification for a juror to presume that one witness is more credible than another simply because of that witness's status or affiliation with the government.

*Moore*, 412 Md. at 649-50, 989 A.2d at 1158. We also determined that "*Bowie* is simply an explication and application of the standard acknowledged and even enforced in *Langley*. In that regard, [*Bowie*] articulated expressly that the issue suggested by the police witness question is broader than those witnesses and, therefore, has relevance beyond cases involving police officers." *Id.* at 650-51, 989 A.2d at 1158. We concluded that "[a]t the heart of the issues presented in *Langley*, *Bowie*, and the case at bar is whether it is appropriate for a juror to give 'credence' to a witness simply because of that witness's 'occupation,' or 'status,' or 'category,' or 'affiliation.'" *Id.* at 652, 989 A.2d at 1159 (quoting *Langley*, 281 Md. at 349, 378 A.2d at 1338, 1344). Thus, *Moore* stands broadly for the proposition that if a potential juror is likely to give more credibility to a specific witness based on that witness's occupation, status, category, or affiliation then, upon request, the trial judge must ask a voir dire question that seeks to uncover that bias. *See id.*

We reiterated in *Moore*, however, that for the inquiry requested by a party to be mandatory,

> the questions proposed must relate to uncovering bias that could arise, given the facts of the case. Accordingly, as a prerequisite to asking the question, there must be a qualifying witness, one, who, because of occupation or category, may be favored, or disfavored, simply on the basis on that status or affiliation. Where, therefore, no police or other official witnesses will be called by the State, the occupational, or status, question need not be asked. On the other hand, if the case is one in which one or more police or official witnesses will be called to testify, the occupational witness question(s) must be asked, if requested.

17

*Id.* at 654-55, 989 A.2d at 1161. Accordingly, our decision in *Moore* also stands for the proposition that the occupational bias question is only mandatory if the trial judge determines that a specific witness who is testifying in the case could, due to his or her occupation, status, or affiliation, be favored or disfavored exclusively on the basis of his or her occupation, status, or affiliation. The inquiry must, therefore, be tailored to the witnesses who are testifying in the case and their specific occupation, status, or affiliation. In the case at bar, the parties agree that the only witnesses testifying in this case, for which the occupational bias question was relevant, were two police officers and one detective. Thus, the trial judge was required to tailor the occupational bias question specifically to the witnesses' occupation as police officers, which he failed to do when he included six other occupations in his inquiry that were not relevant to the case at bar.

## CONCLUSION

In summary, we answer the reformulated certified question in the negative. We hold that when a party requests that an occupational bias question be asked during voir dire, including the police-witness question, the trial judge is required to initially determine whether any witnesses testifying in the case – based on their occupation, status, or affiliation – may be favored or disfavored on the basis of that witness's occupation, status or affiliation, and then propound a voir dire question that is tailored to those specific occupations, statuses, or affiliations. *See Moore*, 412 Md. at 654-55, 989 A.2d at 1161.

18

**THE REFORMULATED CERTIFIED QUESTION ANSWERED. CASE REMANDED TO THE COURT OF SPECIAL APPEALS FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE DIVIDED EQUALLY BETWEEN THE PARTIES.**