*Charles Mitchell v. State of Maryland*, No. 8, September Term, 2023. Opinion by Biran, J.

**STARE DECISIS – EXCEPTION FOR SIGNIFICANT CHANGES IN THE LAW –** The Supreme Court of Maryland abrogated, in part, its decision in *Stewart v. State*, 399 Md. 146 (2007), under the exception to stare decisis for cases that have been superseded by significant changes in the law. Case law subsequent to *Stewart* demonstrates that *Stewart*'s narrow reading of earlier cases involving disqualifying bias toward certain types of witnesses is incorrect.

**VOIR DIRE – DISQUALIFYING BIAS – CHILD-WITNESSES –** The Supreme Court held that bias regarding a child witness can be specific cause for disqualification of a juror where the child's testimony will be important in the trial. In a child sexual abuse case where a 10-year-old child was the State's primary witness, the trial court was required, upon request, to ask a question during voir dire designed to reveal whether potential jurors would prejudge the testimony of the child-witness.

**VOIR DIRE – DUTY TO REPHRASE QUESTION –** The Supreme Court held that, although trial courts have broad discretion as to the scope and form of voir dire questions, they must make any inquiry that is reasonably likely to reveal specific cause for disqualification. Even though defense counsel did not provide a properly phrased question to the trial court concerning child-witness credibility, defense counsel explained why he sought a child-witness question and the trial court agreed to ask part of defense counsel's question, thereby signaling that it found merit in the line of questioning. In these circumstances, the trial court abused its discretion by not reframing defense counsel's question or formulating the court's own question to properly and effectively inquire as to disqualifying bias. Although a trial court is not required to phrase the inquiry concerning child-witness credibility in any particular way, the Supreme Court stated that, in many cases involving a child-witness, an appropriate question would be: "You will hear testimony from a ___-year-old child. Would any prospective juror be more or less likely to believe that witness's testimony based solely on the fact that the witness is a child of that age?"

Circuit Court for Baltimore City
Case No.: 121210002
Argued: November 6, 2023

IN THE SUPREME COURT

OF MARYLAND

No. 8

September Term, 2023

_____

CHARLES MITCHELL

v.

STATE OF MARYLAND

_____

Fader, C.J.
Watts
*Hotten
Booth
Biran
Gould
Eaves,

JJ.

_____

Opinion by Biran, J.
Fader, C.J., concurs.
Hotten and Eaves, JJ., concur and dissent.
Gould, J., dissents.

_____

Filed: August 14, 2024

*Hotten, J., now a Senior Justice, participated in the hearing and conference of this case while an active member of this Court. After being recalled pursuant to Md. Const., Art. IV, § 3A, she also participated in the decision and adoption of this opinion.

Pursuant to the Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Gregory Hilton, Clerk

The Sixth Amendment to the United States Constitution and Article 21 of the Maryland Declaration of Rights guarantee criminal defendants the right to a fair and impartial jury. This requires, among other things, that members of the jury not hold biases that are directly related to the defendant, the crime(s) with which the defendant is charged, or the witnesses who will testify in the case.

The primary mechanism to identify such disqualifying biases among potential jurors is voir dire. To that end, it is well settled that trial courts, upon request, must inquire whether any prospective juror would be more or less likely to believe certain types of witnesses because of the witnesses' occupation, status, or affiliation. These categorical predispositions regarding the credibility of witnesses can be disqualifying because they are reasonably likely to prevent prospective jurors who possess them from impartially weighing the evidence. As such, we previously have held that trial courts must reasonably inquire into disqualifying biases about different types of witnesses, including witnesses who are police officers and witnesses who are called by the defense or State in a criminal trial.

The case before us involves bias relating to another specific type of witness, a minor child. We conclude that a trial court must ask prospective jurors a question designed to uncover disqualifying bias concerning a child-witness where it is reasonable to conclude that: (1) potential jurors may be inclined to believe or not believe the child's testimony

based solely on the child's age; and (2) the child's testimony will be important to the case. In so doing we abrogate, in part, *Stewart v. State*, 399 Md. 146 (2007).[1]

# I

# Background

## A. Relevant Facts and Procedural History

In May 2022, a jury in the Circuit Court for Baltimore City convicted Petitioner Charles Mitchell of one count of sexual abuse of a minor by a family member, in violation of Md. Code, Crim. Law § 3-602(b)(2) (2021 Repl. Vol.).[2] The victim was Mr. Mitchell's nine-year-old daughter, to whom we shall refer as "L." Before the jury was selected, Mr. Mitchell's trial counsel requested that the trial court ask the prospective jurors, among other questions, this two-part question:

> Do you have any concerns about a child testifying? Does anyone not believe
> that a child is capable of lying about a serious crime like this?

The State objected, prompting defense counsel to explain: "I've spoken to some people and they believe ... if a child makes those allegations against their parent, there's some truth to it." Following this, the trial court stated that it would ask the first part, but not the second part, of the defense's requested question. Defense counsel responded, "Okay" and moved on to another question. The trial court subsequently also declined to ask a question that defense counsel requested concerning the #MeToo movement: "Does any member of the

---

[1] We previously abrogated a different part of *Stewart* in *Kazadi v. State*, 467 Md. 1 (2020).

[2] Section 3-602(b)(2) provides that "[a] household member or family member may not cause sexual abuse to a minor."

jury panel identify with, feel compassionate about, or align themselves with the #MeToo movement or Times Up?" Defense counsel also responded "Okay" to that denial and moved on to another question.

In keeping with its earlier ruling, during voir dire the trial court asked the first part of the defense's proffered question concerning the child-witness and omitted the second part. The court also added a statement on its own initiative about the witness's age. Thus, the question, as the trial court put it to the prospective jurors, was:

> In this case, you will hear testimony from a child. Do you have any concerns about a child testifying? And I believe the child in this case who may testify is nine years old.

No prospective jurors responded affirmatively to this question.

The court also asked the prospective jurors, among other questions:

> There may be in this case testimony from one or more Baltimore City police officers. Is there any member of the panel who would give more weight to the testimony of a police officer merely because the witness is a police officer?

> Would any member of the panel give less weight to the testimony of a police officer because the witness is a police officer?

> Is there any member of the panel who would give less weight to a defense witness merely because that witness was called by the defense?

No prospective jurors responded affirmatively to these questions, either.

At the end of voir dire, the trial court asked the parties whether there were any other questions that they wanted to be asked, and defense counsel responded "[n]one from the defense[.]"

At trial, the State relied primarily on the testimony of L., who by that time was 10 years old.[3] When asked by the State why she was testifying in court, L. said: "I'm here because my dad tried to rape me." She then identified Mr. Mitchell in the courtroom and testified that Mr. Mitchell lifted her on top of him, moved her hands toward his penis, and then whispered into her ear that she was "a big girl." The prosecution also called three other witnesses who did not see the alleged abuse, but who testified about their later interactions with L.[4] In closing argument, the defense's theory was that L. was untruthful in her testimony, and perhaps had been coached by an adult in what to say on the stand.

After approximately two hours of deliberations, the jury found Mr. Mitchell guilty of sexual abuse of a minor. The trial court sentenced Mr. Mitchell to 25 years of incarceration, with all but five years suspended.

The Appellate Court of Maryland affirmed in an unreported opinion. *Mitchell v. State*, No. 560, Sept. Term, 2022, 2023 WL 2984745 (April 18, 2023). First, the Appellate Court held that Mr. Mitchell had preserved his claims of error relating to voir dire. *Id.* at *3-*4. The Appellate Court agreed with Mr. Mitchell that his reply of "Okay" to the court's refusal to ask the proposed questions was merely an acknowledgment of the court's rulings

---

[3] The sexual abuse was alleged to have occurred in the early morning hours of June 24, 2021. L. testified on May 19, 2022.

[4] One of these witnesses was a social worker and forensic interviewer, who interviewed L. on June 24, 2021. L.'s recorded statement, which was admissible under the tender years statute, Md. Code Ann., Crim. Proc. § 11-304 (2018 Repl. Vol.), was played before the jury. In that interview, L. provided additional incriminating details concerning Mr. Mitchell's sexually abusive contact with her.

and did not note counsel's agreement with the trial court or otherwise waive Mr. Mitchell's objections to the court's decision not to ask the proffered questions. *Id.* at *3 n.8.[5]

Turning to the merits of Mr. Mitchell's appeal, the Appellate Court noted that trial courts have broad discretion regarding the scope of voir dire and the questions asked, but that such discretion is "constrained: 'On request, a trial court **must** ask a *voir dire* question if and only if the *voir dire* question is reasonably likely to reveal specific cause for disqualification.'" *Id.* at *4 (quoting *Pearson v. State*, 437 Md. 350, 357 (2014)) (emphasis added by the Appellate Court). With respect to the child-witness question, the Appellate Court held that it was bound by this Court's holding in *Stewart v. State*, 399 Md. 146 (2007), that questions concerning the credibility of child-witnesses would not support disqualification for cause. *Id.* at *5. Accordingly, the Appellate Court held that the trial court did not abuse its discretion in refusing to ask the second part of Mr. Mitchell's proposed question concerning the child-witness. The Appellate Court also perceived no abuse of discretion in the trial court's refusal to ask the proffered question concerning the #MeToo movement. *Id.* at *5.[6] Having found no infirmity in the trial court's conduct of voir dire, the Appellate Court affirmed Mr. Mitchell's conviction. *Id.* at *6.

---

[5] The State did not seek further review of the Appellate Court's holding regarding preservation.

[6] Before the Appellate Court, Mr. Mitchell also argued that the trial court plainly erred by conducting follow-up questioning of jurors concerning potentially disqualifying biases in open court, rather than doing so at the bench. The Appellate Court discerned no such plain error. 2023 WL 2984745, at *6. Mr. Mitchell did not seek further review of that portion of the Appellate Court's decision.

Mr. Mitchell subsequently filed a petition for a writ of certiorari, which we granted in part,[7] agreeing to review the following question:

> Should *Stewart v. State*, 399 Md. 146 (2007) – which summarily rejected the request to ask voir dire questions regarding the credibility of children, like the one at issue here: whether any prospective juror would be more or less likely to believe a witness merely because the witness is a child – be reconsidered in light of recent case law governing voir dire?

**B. *Stewart v. State***

In *Stewart v. State*, this Court considered exceptions to a circuit court's failure to ask more than 35 different voir dire questions. *See Stewart*, 399 Md. at 157-58 & n.3. Like this case, *Stewart* involved allegations of child sexual abuse. But the proposed voir dire questions at issue in *Stewart* were wide-ranging,[8] and only a handful were related to the credibility of child-witnesses. For instance, among several other topics, the trial court in *Stewart* refused to ask whether the potential jurors had jobs involving young children, had taken courses on child development, would have difficulty listening to testimony of a graphic and sexual nature, or would have feelings about how a child should be interviewed or questioned about sexual abuse. *Id.* at 152-57.

Relevant here, the trial court in *Stewart* also refused to ask six questions that were related, at least tangentially, to beliefs about child-witness testimony. Several of these questions were worded inappropriately and some were overlapping:

---

[7] We declined to grant further review of the trial court's refusal to ask the #MeToo question.

[8] Reproducing the requested questions at issue in *Stewart* took more than four pages in the Maryland Reports.

40. How many of you believe children always tell the truth?

42. Do you believe children are more or less honest than adults?

43. Would you automatically believe an adult over a child or a child over an adult who testifies?

45. Do you feel just because a child or adult testifies about sexual assault that it must necessarily be true or untrue?

49. Is there anyone here who believes that a child could not be influenced by an adult to say or act in a particular way?

50. What role, if any, do you think adults play in children's reporting of events?

*Id.* at 156.

In our opinion in *Stewart*, we identified the mandatory areas of inquiry in voir dire, based on our prior cases, as: (1) bias against an accused's race, ethnicity, or cultural heritage; (2) whether the religious affiliation of a juror would bias the juror, given the nature of the case; (3) in capital cases, the ability of a juror to convict based upon circumstantial evidence; (4) whether a juror would place undue weight on police officer credibility (citing *Langley v. State*, 281 Md. 337, 349 (1977))[9]; (5) strong feelings regarding violations of drug laws; and (6) strong feelings regarding alleged sexual assault against a minor. *See Stewart*, 399 Md. at 161 n.5 (citing *Curtin v. State*, 393 Md. 593, 609-10 n.8 (2006)).

We held that the trial court did not abuse its discretion in refusing to ask all of the challenged questions, including the six listed above. *Id.* at 164. Most of our analysis was

---

[9] We discuss *Langley* below.

focused on questions other than the six that related to child-witnesses. *See id.* at 164-66.

As to the six child-witness-related questions, we made only two points. First, we stated that those six questions (as well as many of the other proposed questions) were "not questions where the response would support disqualification for cause." *Id.* at 165. That was the case because "[n]one of [the] questions that the judge refused to ask fell within the mandatory areas of inquiry. None of the questions were reasonably likely to reveal cause for disqualification and none of them dealt specifically with the facts of the case, the crime, the witnesses, or [the defendant] himself." *Id.* at 164. Second, with respect to questions 40 and 42, we opined that they (and several of the other questions that did not concern child-witness credibility) were "too broad and general to support a challenge for cause." *Id.* at 165.[10]

As Mr. Mitchell points out, our summary analysis of the child-witness questions in *Stewart* resulted from how that issue was argued by the parties – or, more precisely, how the issue was *not* argued. The petitioner in *Stewart* presented only a single omnibus question on appeal: "Did the trial court err in failing to inquire into and ferret out whether any potential jurors harbored any potential bias towards those charged with sexual acts or homosexual acts with minors?" Thus, even though some of the more than 40 proposed

---

[10] We included two examples to illustrate the point that several questions were "too broad and general to support a challenge for cause[,]" but the examples were directed toward other questions: "For example, whether a person had a job that involved working with infants or young children would not disqualify him or her as a juror. The same is to be said for whether the juror has a close family member who baby-sits for children, has a child or is close to a child the age of the complainant in the case, and so on." *Stewart*, 399 Md. at 165.

questions went to different issues – including the credibility of child-witnesses – the petitioner focused his argument on bias toward the defendant. In total, the petitioner's briefing included only four pages of argument to support his positions on dozens of different voir dire questions. The petitioner did not include specific argument as to any of the six proposed child-witness-related questions, nor did he explain the importance of inquiring into potential biases concerning child-witnesses generally.[11] Given how the argument was framed, we dealt with the proposed questions in *Stewart* in a similarly summary fashion, and likewise we did not focus on the six questions concerning child-witnesses.

The Honorable Robert M. Bell, Chief Judge of the Court, filed a dissenting opinion. Chief Judge Bell did not specifically mention the child-witness-related questions in his opinion. Nor did he take aim at the Majority opinion's broadly worded statements that "[n]one of [the] questions that the judge refused to ask fell within the mandatory areas of inquiry," "[n]one of the questions were reasonably likely to reveal cause for disqualification," and "none of them dealt specifically with the … witnesses," through the lens of child-witnesses or any other kinds of witnesses. Rather, Chief Judge Bell focused on what he deemed the Majority's error in allowing trial courts "to avoid questions

---

[11] The petitioner's opening brief in *Stewart* was filed in the Appellate Court. This Court then granted certiorari on its own initiative, *see Stewart*, 399 Md. at 151, after which the State filed a response brief in this Court. The petitioner did not file a reply brief.

designed to uncover any bias a potential juror may have with respect to the specific crime charged[.]" *Id.* at 172 (Bell, C.J., dissenting).[12]

## II

## Standard of Review

"An appellate court reviews for abuse of discretion a trial court's decision as to whether to ask a *voir dire* question." *Lopez-Villa v. State*, 478 Md. 1, 10 (2022) (quoting *Pearson*, 437 Md. at 356). "[T]he failure to allow questions that may show cause for disqualification is an abuse of discretion constituting reversible error." *Id.* (cleaned up).

## III

## Discussion

"Voir dire is the primary mechanism through which the constitutional right to a fair and impartial jury, guaranteed by the Sixth Amendment to the United States Constitution and Article 21 of the Maryland Declaration of Rights, is protected." *Curtin*, 393 Md. at 600. Maryland employs "limited voir dire[,]" meaning that the sole purpose of voir dire in Maryland "is to ensure a fair and impartial jury by determining the existence of specific cause for disqualification." *Pearson*, 437 Md. at 356 (cleaned up). Voir dire in Maryland is not designed to facilitate "the intelligent exercise of peremptory challenges[.]" *Id.* at 356-57 (internal quotation marks omitted). Thus, a trial court need not ask a voir dire question that is "not directed at a specific cause for disqualification or is merely 'fishing'

---

[12] Chief Judge Bell was the author four years later of the opinion for a unanimous Court in *Moore v. State*, 412 Md. 635 (2010), in which the Court did consider disqualifying bias related to witnesses. We discuss *Moore* below.

for information to assist in the exercise of peremptory challenges." *Id.* at 357 (cleaned up).[13] Conversely, a trial court must ask a voir dire question upon request if it is "reasonably likely to reveal specific cause for disqualification." *Kazadi v. State*, 467 Md. 1, 44-45 (2020) (cleaned up); *Pearson*, 437 Md. at 357. "There are two categories of specific cause for disqualification: (1) a statute disqualifies a prospective juror; or (2) a collateral matter is reasonably liable to have undue influence over a prospective juror." *Collins v. State*, 463 Md. 372, 376 (2019). The second category comprises "biases directly related to the crime, the witnesses, or the defendant." *Id.* at 377 (cleaned up); *Pearson*, 437 Md. at 357.

### A. We Abrogate the Portion of *Stewart v. State* That Reads Prior Cases Such as *Langley v. State* and *Bowie v. State* Too Narrowly.

Mr. Mitchell argues that we should overrule the portion of *Stewart v. State* which held that a trial court is not required to ask prospective jurors questions concerning the credibility of child-witnesses.

"*Stare decisis* means 'to stand by the thing decided,' and is 'the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.'" *State v. Waine*, 444 Md. 692, 699-700 (2015) (citations

---

[13] As part of the Two Hundred and Twenty-Second Report of the Standing Committee on Rules of Practice and Procedure (the "Rules Committee"), the Rules Committee proposed amendments to Maryland Rules 2-512 and 4-312, which govern the conduct of voir dire in civil and criminal cases, respectively. If the proposed amendments are adopted, henceforth voir dire in Maryland will be conducted not only to reveal cause for disqualification but also to allow the parties to obtain information that may provide guidance for the use of peremptory challenges. This Court is scheduled to consider the Rules Committee's Two Hundred and Twenty-Second Report in an open meeting on September 12, 2024.

omitted). "[U]nder the doctrine of *stare decisis*, a court's previous decisions should not be lightly set aside." *State v. Green*, 367 Md. 61, 78 (2001). However, we "may overrule a case that either was 'clearly wrong and contrary to established principles' or 'has been superseded by significant changes in the law or facts.'" *Scott v. State*, 454 Md. 146, 183 (2017) (quoting *Meyer v. State*, 445 Md. 648, 669 (2015)). These exceptions are "extremely narrow[.]" *Lawrence v. State*, 475 Md. 384, 415 (2021) (citations omitted).

The State argues that *Stewart* was not clearly wrong when it was decided and that it has not been superseded by significant changes in the law. In support, the State points out that several of the child-witness questions at issue in *Stewart* were poorly phrased and properly rejected, and the State argues that our case law after *Stewart* merely reaffirmed earlier cases and did not meaningfully change the law.

Mr. Mitchell argues that *Stewart* was clearly wrong at the time it was decided, which Mr. Mitchell chalks up to an absence of any specific reasoning in the opinion concerning the child-witness questions. Mr. Mitchell also argues that, even if *Stewart* was not clearly wrong when it was decided, there have been significant changes in the law governing voir dire since *Stewart* that warrant its reconsideration and abrogation in part. We agree that subsequent changes in the law have superseded *Stewart*'s narrow reading of earlier cases involving disqualifying bias toward certain types of witnesses.

Before *Stewart* was decided, our cases recognized the need to inquire into biases related to witness credibility, at least in certain circumstances. In the leading case of *Langley v. State*, this Court held that trial courts must inquire whether potential jurors would "give greater weight" to police officer testimony "largely because of the official

12

status of the witness" – at least "where a principal part of the State's evidence is testimony of a police officer[.]" *Langley v. State*, 281 Md. 337, 348-49 (1977). In another pre-*Stewart* case, this Court held that voir dire was required to determine whether potential jurors would "view the testimony of witnesses called by the Defense with more skepticism than witnesses called by the State, merely because they were called by the Defense[.]" *Bowie v. State*, 324 Md. 1, 6-11 (1991).

For many years, *Langley* and *Bowie* were understood to have limited reach – *i.e.*, they were read as recognizing discrete areas of mandatory inquiry based upon the facts at issue in those two cases. *Langley*'s mandatory area was said to be whether a potential juror would place "undue weight on police officer credibility[.]" *See, e.g., Curtin*, 393 Md. at 610 n.8; *State v. Logan*, 394 Md. 378, 397 & n.2 (2006) (same), *overruled in part by Kazadi v. State*, 467 Md. 1 (2020). Thus, *Langley* often was cited only for that proposition, and usually as part of a longer list of other mandatory inquiries, each stemming from different cases. *See, e.g., Curtin*, 393 Md. at 609-10 n.8; *Evans v. State*, 333 Md. 660, 668 (1994).

As for *Bowie*, which dealt with several different requested voir dire questions, that case was understood to establish multiple mandatory areas of inquiry, including "prospective jurors' possible racial bias[,]" *Hill v. State*, 339 Md. 275, 280 (1995), "disqualifying biases in favor of the death penalty[,]" *Oken v. State*, 343 Md. 256, 273 (1996), and identifying potential jurors who would categorically "prefer the testimony of State's witnesses over defense witnesses." *Marquardt v. State*, 164 Md. App. 95, 145 (2005) (internal quotation marks omitted), *overruled in part on other grounds by Kazadi v. State*, 467 Md. 1 (2020).

13

*Stewart* itself is an example of this prevailing interpretation – *i.e.*, that the reasoning of *Langley* and *Bowie* largely did not extend beyond the facts of those cases.[14] Neither party in *Stewart* cited to *Bowie* or argued that *Langley*'s analysis related to any of the questions at issue. The *Stewart* opinion likewise did not mention *Bowie*. And when it referenced *Langley*, it did so in the same vein as did the State in its brief in *Stewart*: as part of a list of specific exceptions to the general rule that a trial court has discretion to choose which areas of inquiry to allow in voir dire. *See Stewart*, 399 Md. at 161 n.5, 165-66.[15] We cannot say that this prevailing interpretation of *Langley* and *Bowie* was clearly wrong at the time this Court reiterated it in *Stewart.*

However, a few years after *Stewart* was decided, this Court acknowledged and elaborated upon *Langley*'s broader import. In *Moore v. State*, we stated that "[a]t first glance the holding in *Langley* may be viewed, and interpreted as, limited to witnesses who are police officers[,]" but went on to explain that the cases relied upon in *Langley* "also

---

[14] At least one Appellate Court decision appeared to note pre-*Stewart* that the reasoning of *Bowie* and *Langley* was not so limited. *See Baker v. State*, 157 Md. App. 600, 614 (2004) ("The State distinguishes the present case from *Bowie* because the trial court here did not ask about police witnesses. *Bowie* indicates, however, that the concern extends to State's witnesses other than police officers[.]"). But there, the Appellate Court held only that the trial court was required to ask essentially the same question as one of the questions at issue in *Bowie*: "whether ... you would tend to view the testimony of witnesses called by the defense with more skepticism than those called by the State, merely because they were called by the defense." *Id.* There was no discussion of inquiring, more broadly, into biases concerning the status or affiliation of other types of witnesses.

[15] Specifically, in *Stewart*, this Court stated that *Langley* concerned "the mandatory question regarding whether a potential juror would give greater weight to the testimony of a witness due to his or her official status," 399 Md. at 165, and that *Langley* thus represented a "limited exception" to the rule that a "trial judge is not required ... to ask specific questions[.]" *Id.* at 160-62.

14

revealed that their concern ... was not directed only to situations where the witness was a police officer, [and] that their reach was not nearly so narrow." *Moore v. State*, 412 Md. 635, 645-46 (2010). Thus, we characterized *Bowie* not as creating its own discrete (and factually distinct) legal requirements, but rather as "simply an explication and application of the standard acknowledged" in *Langley* that likewise recognized "the issue suggested by the police witness question is broader than those witnesses[.]" *Id.* at 650-51.

Following this reasoning, we held in *Moore* that a trial court must, if requested, ask whether a potential juror would give more credence to a prosecution witness, and less credence to a defense witness, simply based upon which side called the witness. *Id.* at 664-65. We also explained the principle that compelled this result: "[a]t the heart of the issues presented in *Langley*, *Bowie* and the case at bar is whether it is appropriate for a juror to give credence to a witness simply because of that witness's occupation, or status, or category, or affiliation." *Id.* at 652 (internal quotation marks omitted). Thus, we observed, "it is apparent that the *Langley* Court ... understood that, although it was addressing police officer credibility ... the underlying issue of prejudgment encompassed more than police officers, [and] that many more occupations and categories potentially were implicated." *Id.* at 649. And we characterized *Bowie* as recognizing "as *Langley* had done, albeit more generally, that favoring a witness on the basis of that witness's category or affiliation poses the same threat to the defendant's right to a fair and impartial trial as favoring a witness on the basis of occupation or status; in other words … there is not just one way that prejudgment could manifest." *Id.* at 653.

*Moore* expanded and clarified the reach of *Langley* and *Bowie* in a way that had not been done when *Stewart* was decided.[16] *See Thomas v. State*, 454 Md. 495, 511-12 (2017) ("In *Moore*, we expanded our holding in *Langley*.... *Moore* stands broadly for the proposition that if a potential juror is likely to give more credibility to a specific witness based on that witness's occupation, status, category, or affiliation then, upon request, the trial judge must ask a voir dire question that seeks to uncover that bias."). To the extent *Stewart* held that a circuit court is not required to ask questions designed to uncover prejudgment of credibility with respect to statuses, categories, occupations, and affiliations of witnesses that were not already identified in case law, that holding has been superseded by significant changes in the law, and accordingly we abrogate it.

**B. The Trial Court Abused Its Discretion by Failing to Inquire Sufficiently into Disqualifying Bias Concerning the Child-Witness in This Case.**

1. Bias Regarding a Child-Witness Can Be Disqualifying in Circumstances Such as Those Present in This Case.

The State argues that, even if *Stewart* is abrogated in pertinent part and this Court therefore is writing on a blank slate, we should hold that it is not necessary to inquire into biases concerning child-witnesses because "[t]he fact that a witness is a child is rationally related to their credibility[,]" and age therefore is not an extraneous consideration. Mr. Mitchell acknowledges that jurors may consider a witness's age in assessing the credibility of a witness's testimony. However, he contends that jurors must not prejudge a witness's

---

[16] Notably, the Court in *Moore* rejected the State's argument that, by not citing *Bowie* in its list of prior cases that had established mandatory areas of inquiry in voir dire, *Stewart* (and *Curtin,* another post-*Bowie* case) had overruled *Bowie*. *See Moore*, 412 Md. at 655-58.

16

credibility simply because the witness is a child, but rather must assess the testimony as it is presented and in conjunction with the other evidence adduced in the case. Thus, according to Mr. Mitchell, whether a juror will prejudge a child-witness's credibility is a matter that a trial court must cover during voir dire.

A court must ask prospective jurors a question designed to uncover bias concerning a certain type of witness when the court reasonably determines that such bias could affect the fairness of the trial. A court reasonably reaches that conclusion if two circumstances are met. *First*, "there must be a qualifying witness, one, who, because of occupation or category, may be favored, or disfavored, simply on [that] basis[.]" *Moore*, 412 Md. at 655. *Second*, where the bias relates to a witness's status – such as the status of being a child – the witness's testimony must be important to the case.[17, 18]

Here, the State does not appear to dispute that jurors may have biases concerning the category of child-witnesses. During voir dire, the defense raised concerns that some potential jurors would automatically credit testimony that a parent committed sexual abuse,

---

[17] Where the bias relates to a witness's occupation – such as a law enforcement officer – the occupation must be important in the context of the witness's testimony. *Compare Langley*, 281 Md. at 349 ("[I]n a case such as this, where a principal part of the State's evidence is testimony of a police officer diametrically opposed to that of a defendant, it is prejudicial error to fail to propound a question such as that requested[.]"), *with Washington v. State*, 425 Md. 306, 322 (2012) ("Ms. Smith and Ms. Watkins were not testifying at the trial against Petitioner in an official military capacity and their civilian occupations were not otherwise relevant to the crimes for which Petitioner was charged. Thus, ... the witness occupation question was not mandatory on voir dire[.]").

[18] If the trial court determines that the testimony of the witness in question is not important to the case, the trial court nevertheless has discretion to inquire whether any prospective jurors would tend to ascribe more or less credibility to witnesses who share the witness's status.

17

simply because the testifying witness was a child. Although the State objected to the defense's proposed question, it did not attempt to rebut the defense's claim about potential bias. In his briefing here, Mr. Mitchell has cited both academic papers and anecdotal evidence to support his contention that jurors may hold disqualifying views about child-witnesses. Among other things, he cites to various studies. Some of these suggest that jurors may automatically discount children's testimony. *See* David McCord, *Expert Psychological Testimony about Child Complainants in Sexual Abuse Prosecutions: A Foray into the Admissibility of Novel Psychological Evidence*, 77 J. Crim. L. & Criminology 1, 45-46 (Spring, 1986) (describing the mixed findings of several studies, one indicating that "the age of the witness had a powerful effect on the credibility rating" and that "[y]ounger witnesses were perceived as less credible"). Others, however, seem to indicate the opposite: that a child's testimony may be weighted more heavily in certain cases, or by certain individuals. *See* Jessica Libergott Hamblen & Murray Levine, *The Legal Implications & Emotional Consequences of Sexually Abused Children Testifying as Victim-Witnesses*, 21 L. & Psych. Rev. 139, 153-54 (1997) ("[T]he child's age seems to have the largest impact on credibility and conviction. Fairly consistently, younger children are perceived as more credible than older children and adults. Child victim-witnesses around the age of nine seem to be the best witnesses."); *Children as Observers and Witnesses: The Empirical Data*, 23 Fam. L.Q. 411, 428-29 (Fall, 1989) (summarizing experimental jury research and noting a finding in one study that "the highest guilt ratings were obtained in the condition containing the child witness with a powerful speech style" – even compared to adult witnesses who testified with the same speech style).

Mr. Mitchell also references the anecdotal experience of the Office of the Public Defender in a recent trial in which 13 prospective jurors responded affirmatively during voir dire that they "would believe the testimony of children over that of any other witness solely because they are children."[19]

In response, the State still does not attempt to rebut Mr. Mitchell's claim that prospective jurors might automatically give children more or less credence than other witnesses, simply based upon age alone (and without waiting to hear the evidence as it is presented). The State cites no additional studies, does not respond directly to the authorities cited by Mr. Mitchell, and does not otherwise dispute Mr. Mitchell's contention that prospective jurors sometimes hold disqualifying biases about child-witnesses. Instead, the State asserts that inquiring into these biases should not be mandatory for two reasons: (1) age can be considered in determining whether a witness is credible because age "may be relevant" to a witness's honesty, perception, memory, and communication; and (2) a court can consider age in determining whether a witness is competent to testify, an inquiry that includes whether a witness can "observe, understand, recall, and relate happenings while conscious of a duty to speak the truth." *Perry v. State*, 381 Md. 138, 148-49 (2004). These arguments miss the mark.

To be sure, there are instances in which it may be appropriate for jurors to consider a witness's age in evaluating the witness's testimony. For example, a child who is competent to testify may nevertheless describe their observations differently than an adult,

---

[19] This occurred during voir dire in *State v. Gonzalez*, No. 138036C (Montgomery Cnty. Cir. Ct. June 14, 2022).

and jurors can consider that when evaluating the testimony. A child might also exhibit different mannerisms and demeanor on the witness stand and respond differently to cross-examination. Jurors can and should observe the witnesses and consider the context – including, where appropriate, the age of the witnesses – in determining what weight to give their testimony. But this does not mean that we should be unconcerned about biases jurors may hold with respect to child-witnesses: jurors must not *prejudge* a child's testimony before hearing the evidence. In the context of a sexual abuse trial, a potential juror who believes that children cannot lie about abuse (or that children's testimony must always be weighted more heavily than the testimony of adult witnesses) is likely to rely upon that bias to evaluate the testimony. The same is true of a potential juror who believes that all children under a certain age are incapable of separating fact from fiction (or that children's testimony must always be weighted less heavily than that of adult witnesses). In either instance, the problem is that a potential juror with such a bias would be reasonably likely to make credibility determinations based on their preconceived views, and not on the actual testimony and other evidence introduced in the case.

The State attempts to distinguish bias in favor of or against police officer testimony, or in favor of or against a witness based on which party is calling the witness, from bias in favor of or against child-witness testimony. With respect to the first two categories, the State asserts that a witness's "mere occupation as a police officer or their party affiliation should be of no importance to a juror's determination of whether the witness is credible (thus bias for or against the witness on that basis may be disqualifying for cause)[.]" According to the State, a different rule should apply to child-witness testimony because

"[t]he fact that a witness is a child is rationally related to their credibility." The State fails to appreciate that *prejudgment* is the problem with respect to all such witnesses. Moreover, the State's premise is flawed. Just as a juror may apply their personal experience with respect to children as one of many factors when assessing the credibility of a child-witness, a juror may apply their own experience with respect to police officers and may consider generally the incentives inherent in testifying for a particular party (such as a cooperating defendant testifying as a witness for the State) as factors when assessing the credibility of such witnesses.[20] This does not mean that, in voir dire, there is no need to inquire whether a prospective juror will make a positive or negative credibility determination with respect to a police officer-witness, or a witness affiliated with one of the parties, before the witness testifies. *Langley* and *Bowie* direct otherwise.

The State's reliance on competency is likewise misplaced. A competency evaluation assesses the ability of an individual witness to testify, taking age and other factors into consideration. Notably, a witness's age, without more, generally will not render the witness incompetent. *See Perry*, 381 Md. at 157 ("[W]e hold that in a case where the objecting party states that a child is seven years old and baldly asserts that the child lacks the ability to understand the difference between truth and fiction, without more, a substantial question as to competency has not been raised."). Unlike a competency assessment, a voir dire question concerning a status or occupation does not ask about the ability of an individual

---

[20] Indeed, where applicable, trial judges instruct jurors at the conclusion of a criminal case to consider testimony by certain categories of witnesses – accomplices and those who have been promised a benefit, such as immunity from prosecution – "with caution." MPJI-Cr 3:11, 3:13.

21

member of a group to testify, but rather whether prospective jurors perceive the entire group as credible or as lacking credibility.[21]

Under the circumstances present in this case, the court, upon request, was required to ask prospective jurors a question designed to uncover bias concerning child-witness credibility. First, at 10 years old, L. was a qualifying child-witness – *i.e.* a child-witness of an age where it is reasonable to conclude that a potential juror might believe or disbelieve the child's testimony based solely on age.[22] Second, it was clear that L.'s testimony would be important in Mr. Mitchell's trial. L. was not a tangential witness with no other connection to the parties. Rather, she was the principal witness in a child sexual abuse case.

2. The Trial Court Abused Its Discretion by Asking Only the First Part of Defense Counsel's Question and Not Rephrasing the Second Part.

Defense counsel's proposed two-part question relating to child-witness credibility was:

Do you have any concerns about a child testifying? Does anyone not believe that a child is capable of lying about a serious crime like this?

As phrased by defense counsel, the question was not proper. Unlike the questions the trial court asked that were designed to uncover bias concerning police witnesses and

---

[21] Our analysis here assumes that a child-witness has been or will be found competent to testify, as L. was here. However, the concept of competency does illustrate how disqualifying bias about child-witnesses can undermine fairness in a trial. If a potential juror believes that all children under a certain age are incapable of understanding the difference between fact and fiction, there is a reasonable likelihood that the juror would disregard the testimony of any witness under that age without considering whether that witness could give credible testimony – notwithstanding that the trial court had allowed the witness to testify and necessarily found the witness competent to do so.

[22] The trial court mistakenly believed that L. was nine years old at the time of trial.

defense witnesses,[23] the second part of defense counsel's proposed question concerning child-witness credibility was not worded in a neutral manner. By referring to a child-witness's "capab[ility] of lying," defense counsel baked into the question the theory of the defense. The trial court appropriately declined to ask the second part of defense counsel's question in the form in which it was proposed. However, that begs the question whether the trial court abused its discretion by not asking an appropriate question designed to uncover child-witness bias by either rephrasing the second part of the question or forming one of its own.

A trial court has "broad discretion in the conduct of voir dire, most especially with regard to the scope and the form of the questions propounded[.]" *Dingle v. State*, 361 Md. 1, 13 (2000). However, as discussed above, a trial court must make any inquiry that is "reasonably likely to reveal specific cause for disqualification," including a "collateral matter reasonably liable to have undue influence over a prospective juror," such as "biases directly related to the crime, the witnesses, or the defendant." *Pearson*, 437 Md. at 357 (cleaned up). The court need not ordinarily ask a particular requested question if the matter

---

[23] The trial court asked the prospective jurors:

> There may be in this case testimony from one or more Baltimore City police officers. Is there any member of the panel who would give more weight to the testimony of a police officer merely because the witness is a police officer?
>
> Would any member of the panel give less weight to the testimony of a police officer because the witness is a police officer?
>
> Is there any member of the panel who would give less weight to a defense witness merely because that witness was called by the defense?

23

is fairly covered by the questions the court puts to the prospective jurors. *See Burch v. State*, 346 Md. 253, 293 (1997).

Mr. Mitchell asserts that, because defense counsel requested a voir dire question on a subject matter that would elicit disqualifying cause, if the court was not satisfied with defense counsel's wording, the court had a duty to reframe it so that it was proper and effective. A "better framing" of the question, according to Mr. Mitchell, "would have been: whether any prospective jurors would have been more or less likely to believe a witness merely because the witness was a child." Mr. Mitchell contends that, by not reframing the question, the trial court abused its discretion.

The State argues that the trial court did not abuse its discretion because the first part of the proposed question fairly covered the point that the second half sought to get at. According to the State, asking whether the prospective jurors had "any concerns about a child testifying" made it reasonably likely that any prospective juror's bias concerning child-witness credibility would be disclosed. We disagree.

Because of its focus on "concerns" about children testifying, the first part of defense counsel's question would not necessarily elicit the type of disqualifying bias that Mr. Mitchell sought to reveal. Instead, the question might elicit extraneous concerns about, among other things, the traumatic impact on children of testifying. There are many reasons why a potential juror might "have concerns about" such testimony, particularly when there are allegations that the child has suffered sexual abuse. For example, potential jurors might be concerned about the psychological effect on the child of testifying, worry about making

the child relive a traumatic event, or they might be uncomfortable about the prospect of cross-examining a child.

In addition, the first part of the question might not identify disqualifying biases about child-witnesses. Consider, for example, a potential juror who firmly believed that, if a child reports sexual abuse, then that report must be accurate. This potential juror might be unlikely to voice any "concerns" about a child testifying. Even if they had some extraneous concern about the traumatic effect of testifying, their concerns might well be outweighed by the perceived benefit of a child testifying. That is, a potential juror with this type of disqualifying bias very well might want a child to testify and might find comfort – not concern – in knowing that a child would testify. This potential juror would believe that, through the child's testimony, the jury would necessarily learn the truth.

Thus, because the question asked at voir dire was directed simply at "concerns" about children testifying, the question failed to fairly cover the matter because it was both over- and under-inclusive: it might elicit extraneous concerns that are irrelevant to the age-related bias inquiry, while at the same time not necessarily identifying such bias.

Alternatively, the State argues that the trial court did not abuse its discretion because Mr. Mitchell's trial counsel did not ask the question as Mr. Mitchell's appellate counsel has reframed it. The State concedes that a court must ask a voir dire question that is reasonably likely to reveal specific cause for disqualification, and also acknowledges that a court has discretion to rephrase an improperly phrased voir dire question. However, the State argues that the trial court had discretion here *not* to rephrase Mr. Mitchell's child-witness question because Mr. Mitchell did not ask the court to rephrase it or seek to

rephrase it himself, and because Mr. Mitchell "seemed to agree with the court's decision and immediately began discussing a different proposed question."

It is helpful at this point to provide the full colloquy concerning the requested child-witness credibility question:

> [DEFENSE COUNSEL]: The next question is, "In this case, you will hear testimony from a child. Do you have any concerns about a child testifying?" "Does anyone not believe that a child is capable of lying about a serious crime like this?"
>
> [PROSECUTOR]: I would object to that.
>
> [DEFENSE COUNSEL]: I've spoken to some people and they believe, like, if a little child makes those allegations against their parent, there's some truth to it.
>
> ….
>
> THE COURT: The first part, I would grant.
>
> [DEFENSE COUNSEL]: Okay.
>
> THE COURT: The second part, I wouldn't.
>
> [DEFENSE COUNSEL]: Okay. And the next question is, ....

Although a trial court has discretion whether to rephrase an improper voir dire question, *see Logan v. State*, 164 Md. App. 1, 61 (2005), *aff'd*, 394 Md. 378 (2006); *see also State v. Shim*, 418 Md. 37, 55 (2011) ("A proposed *voir dire* question need not be in perfect form, and the court is free to modify the proposed question as needed."), *abrogated on other grounds by Pearson*, 437 Md. 350 (2014), a trial court does not have discretion to decline an inquiry that is reasonably likely to reveal specific cause for disqualification. *See, e.g., Pearson*, 437 Md. at 356. Thus, if a defendant seeks to inquire into disqualifying bias and a trial court has been "fully apprised of the essence of what the defendant [is] seeking,"

26

then the court should "ask on its own motion ... a proper question designed to ascertain the existence of cause for disqualification[.]" *Contee v. State*, 223 Md. 575, 580 (1960); *see also Logan*, 164 Md. App. at 61 ("Even if appellant's questions were not well framed, ... he sought to discover cause for disqualification based on bias .... On that basis, if the court below was not satisfied with the form, it could have reformulated the questions or allowed defense counsel to do so.").

The clear import of defense counsel's proposed question and follow-up comment about "some people … believ[ing] … if a little child makes those allegations against their parent, there's some truth to it," was that defense counsel sought to inquire regarding disqualifying biases the prospective jurors might hold concerning child-witness credibility. The court agreed to ask the first part of defense counsel's proposed question, signaling that the court found merit in this line of questioning. As we previously stated, the trial court appropriately declined to ask the improperly worded second part of defense counsel's question. However, the trial court erred when it decided to cover defense counsel's requested line of questioning by only asking the first part of the two-part question. As discussed, the first part of the question by itself was insufficient to reveal disqualifying bias concerning child-witness credibility. Instead, the court should have rephrased the second part of the question so that it properly sought to discover such bias (in which case the court perhaps could have dispensed with the first part of the question entirely).[24]

---

[24] The questions the court asked concerning police officer witnesses and witnesses called by the defense could have been modified to inquire into disqualifying biases about child-witnesses. *See* note 23 above.

27

We disagree with the State's position that, by saying "Okay" after the trial court declined to ask the second part of the proposed question, defense counsel indicated to the trial court that there was no need to inquire further. We agree with the Appellate Court that the "Okay" statement here merely acknowledged the trial court's ruling and was understood, at the time, to have that effect. *See Mitchell*, 2023 WL 2984745, at *3 n.8.

In sum, in the circumstances presented here, the trial court was required to inquire into disqualifying bias concerning child-witnesses. The trial court recognized the need to make such inquiry by agreeing to ask the first part of defense counsel's question, but abused its discretion by asking only that part of the question, which was insufficient to reveal disqualifying bias.[25]

We conclude with a few additional points. First, a trial court is not required to phrase the inquiry concerning child-witness credibility in any particular way. However, in many cases involving a child-witness, an appropriate question would be: "You will hear testimony from a ___-year-old child. Would any prospective juror be more or less likely to believe that witness's testimony based solely on the fact that the witness is a child of that age?"

Second, it may not be necessary to inquire into age-related disqualifying bias in every instance where a minor will be an important witness. The need to make that inquiry in this case was clear, given that L. was 10 years old at the time of trial. A trial court may

---

[25] A trial court does not have a general obligation to rephrase improperly worded voir dire questions. However, if a trial court reasonably should understand that counsel's improperly worded question is designed to reveal disqualifying juror bias, the court has an obligation to rephrase the question so that it properly achieves that objective.

well conclude that it is not necessary to make the same inquiry in a case involving a child-witness who is close to the age of majority.

Third, although we have abrogated *Stewart* to the extent that it is inconsistent with our analysis here, it does not follow that the six child-witness questions at issue in *Stewart* are now mandatory. To the contrary, as stated above, several of those questions were poorly phrased, some duplicated others, and – regardless – a trial court inquiring into disqualifying biases retains discretion in how to phrase its questions.

Finally, in addition to applying to trials that occur going forward from today, this decision shall apply to Mr. Mitchell's case and to all other cases pending on direct appeal or not yet final, when this opinion is filed, where the issue is preserved for appellate review.

**IV**

**Conclusion**

We abrogate, in part, *Stewart v. State* because its narrow reading of earlier cases involving disqualifying bias toward witnesses has been superseded by subsequent case law. A trial court must ask prospective jurors a question designed to uncover disqualifying bias concerning a child-witness where it is reasonable to conclude that: (1) potential jurors may be inclined to believe or disbelieve the child's testimony based solely on the child's age; and (2) the child's testimony will be important to the case. Here, both of these requirements were met. The trial court abused its discretion by not asking a proper and effective voir dire

question aimed at uncovering such disqualifying bias. For these reasons, Mr. Mitchell is entitled to a new trial.

> **JUDGMENT OF THE APPELLATE COURT OF MARYLAND REVERSED; CASE REMANDED TO THAT COURT WITH THE DIRECTION TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AND REMAND THE CASE FOR A NEW TRIAL. COSTS IN THE APPELLATE COURT OF MARYLAND AND THIS COURT TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.**

Circuit Court for Baltimore City
Case No.: 121210002
Argued: November 6, 2023

IN THE SUPREME COURT

OF MARYLAND

No. 8

September Term, 2023

CHARLES MITCHELL

v.

STATE OF MARYLAND

Fader, C.J.
Watts
*Hotten
Booth
Biran
Gould
Eaves,

JJ.

Concurring Opinion by Fader, C.J.

Filed: August 14, 2024

*Hotten, J., now a Senior Justice, participated in the hearing and conference of this case while an active member of this Court. After being recalled pursuant to Md. Const., Art. IV, § 3A, she also participated in the decision and adoption of this opinion.

I concur in the Majority Opinion. I write separately to expound briefly on two points.

First, one of the two criteria the majority identifies for when a trial court must ask prospective jurors a question designed to uncover disqualifying bias concerning a child-witness is when "the child-witness's testimony will be important to the case." Op. at 1-2. Although I expect that requirement will need to be fleshed out in future cases, I think it is appropriate to provide some additional guidance concerning when a child-witness's testimony may be "important" to a case such that the child-witness question will be mandatory (if requested).

As discussed in the majority opinion, the voir dire inquiry is aimed at identifying disqualifying bias that might affect a juror's determination of a child-witness's credibility based on their status as a child. *Id.* at 19-22. Two considerations follow from that. First, because the question goes to credibility, it should be required only when the credibility of the child-witness is implicated with respect to a contested issue in the case. Second, because the inquiry focuses on bias based on a child-witness's status as a child, it should not be mandatory unless a challenge to the witness's testimony might relate to that status. Here, the child-witness was the sole witness to the abuse, her credibility was the central issue in the case, and her status as a young child was critical to the credibility dispute.

Second, in footnote 25, the majority opinion clarifies that "[a] trial court does not have a general obligation to rephrase improperly worded voir dire questions." *Id.* at 28 n.25. That point is worth emphasizing. A trial court's obligation to reformulate a deficient voir dire question arises only when (1) the question is designed to address a ground for

disqualifying bias that is relevant to the case, (2) the trial court understands the ground for disqualifying bias that the question is designed to address, and (3) there is a readily apparent formulation of the question that will cure the deficiency.

The circumstances of this case fit all those criteria, as (1) the child-witness question is designed to address a ground for disqualifying bias, *see id.* at 19-22, (2) the trial court's statements during the bench conference reveal that the judge understood the ground to which the question was addressed, *see id.* at 26, and (3) questions designed to identify status-based bias against other categories of witnesses provided a ready formulation for an appropriate question, *see id.* at 23 n.23, 27-28, 28 n.24. The Court's decision today should not be understood to lessen the burden on counsel to formulate appropriate voir dire questions or to impose on trial courts the burden of identifying hidden kernels within deficient questions to propose new avenues of inquiry.

IN THE SUPREME COURT

OF MARYLAND

No. 8

September Term, 2023

CHARLES MITCHELL

v.

STATE OF MARYLAND

Fader, C.J.
Watts,
*Hotten,
Booth,
Biran,
Gould,
Eaves,

JJ.

Concurring and Dissenting Opinion by Eaves,
J., which Hotten, J., joins.

Filed: August 14, 2024

*Hotten, J., now a Senior Justice, participated in
the hearing and conference of this case while an
active member of this Court. After being
recalled pursuant to the Maryland Constitution,
art. IV, § 3A, she also participated in the decision
and adoption of this opinion.

I respectfully concur in part and dissent in part.[1]

I concur with the Majority that *Moore v. State*, 412 Md. 635 (2010), was a significant enough change in the law since the time this Court decided *Stewart v. State*, 399 Md. 146 (2007), overcoming the difficult hurdle of *stare decisis*, permitting us to revisit the portion of *Stewart* that held that *voir dire* questions related to bias against child-witnesses need not be asked in a child sex abuse case. Maj. Op. at 16 ("*Moore* expanded and clarified the reach of *Langley* and *Bowie* in a way that had not been done when *Stewart* was decided.").

In revisiting that question, however, I disagree with the Majority, which holds that "a question designed to uncover disqualifying bias concerning a child-witness" must, upon request, be asked. *Id.* at 29. Requiring questions regarding the age of a child witness during *voir dire*, even if requested, would do little, if anything, to help parties determine whether a juror would prejudge the testimony of that child. Furthermore, the holding today runs the risk of transforming Maryland's limited *voir dire* into a fishing expedition.

---

[1] The question on which we granted certiorari is:

> Should *Stewart v. State*, 399 Md. 146 (2007) – which summarily rejected the request to ask voir dire questions regarding the credibility of children, like the one at issue in this case, that is: whether any prospective juror would be more or less likely to believe a witness merely because the witness is a child – be reconsidered in light of recent case law governing voir dire?

If we answer that question in the affirmative, then we necessarily must address the result of that reconsideration. Thus, the Majority opinion has two holdings: (1) that reconsideration is warranted and (2) upon reconsideration, *Stewart* was wrong as to the question in this case.

# I
## INEFFECTIVE AT ROOTING OUT BIAS

In *Pearson v. State*, we stated:

> Maryland employs limited *voir dire*.  That is, in Maryland, the sole purpose of *voir dire* is to ensure a fair and impartial jury by determining the existence of [specific] cause for disqualification[.]  Unlike in many other jurisdictions, facilitating the intelligent exercise of peremptory challenges is not a purpose of *voir dire* in Maryland.  Thus, a trial court need not ask a *voir dire* question that is not directed at a specific [cause] for disqualification[ or is] merely fishing for information to assist in the exercise of peremptory challenges[.]

> On request, a trial court must ask a *voir dire* question if and only if the *voir dire* question is reasonably likely to reveal [specific] cause for disqualification[.]   There are two categories of specific cause for disqualification: (1) a statute disqualifies a prospective juror; or (2) a collateral matter [is] reasonably liable *to have undue influence* over a prospective juror.  The latter category is comprised of biases directly related to the crime, the witnesses, or the defendant[.]

*Pearson v. State*, 437 Md. 350, 356–57 (2014) (alterations in original) (emphasis added) (quotation marks, citations, and footnote omitted).

For bias pertaining to a collateral issue to constitute an "undue influence," it must be so extreme that it renders the mind of the juror "fixed" and blind to the evidence presented at trial, which factors into the jurors' credibility determinations.  *See Langley v. State*, 281 Md. 337, 340 (1977) (noting that the right to a fair and impartial trial requires excluding those who have formed "a fixed opinion in regard to the matter in issue[]" (quoting *Waters v. State*, 51 Md. 430, 436 (1879)); *see also Bowie v. State*, 324 Md. 1, 6–11 (1991).  In *Langley* and *Bowie*, this Court *carefully* expanded our still-limited *voir dire* in matters concerning the testimony of law enforcement.  Indeed, we stated in *Langley*:

> A juror who states on voir dire that he [or she] would give more credit to the testimony of police officers than to other persons has prejudged an issue of

> credibility in the case. Regardless of his [or her] efforts to be impartial, a part of his [or her] method for resolving controverted issues will be to give greater weight to the version of the prosecution, largely because of the official status of the witness.

281 Md. at 348. *Langley* derived this position from the concerns expressed by the Supreme Court of the United States and adopted by this Court. *See Waters*, 51 Md. at 439 ("It is evident from the views of these eminent jurists, that the opinion which should exclude a juror *must be a fixed and deliberate one*, partaking in fact of the nature of a pre-judgment." (emphasis added) (citing language from Chief Justice Marshall, 1 Burr's Trial, 367, and Judge Taney, Wharton's Crim. Law, 2981)).

There is no Maryland caselaw, nor any evidence or studies pointed to by Petitioner, which equates one's age with the degree of unfair pre-judgment similarly recognized with bias for or against witnesses for the State or the defense. To be sure, the Majority relies on various academic papers and anecdotal evidence cited by Petitioner to emphasize that a child-witness's age has a powerful effect on the child's *credibility rating*. Maj. Op. at 18–19. But studies purporting to show a correlation between a witness's age and credibility do little in this context. The assessment of credibility, of course, is determined *during the deliberation process*—after a jury has heard *all* the evidence in a case. These studies on *credibility* tell us nothing helpful about whether members of the jury possibly have a preconceived bias towards child-witnesses because credibility determinations are complex and consider *many* factors. For instance, in instructing juries on credibility determinations, trial judges typically read the following:

You are the sole judge of whether a witness should be believed. In making this decision, you may apply your own common sense and everyday experiences.

In deciding whether a witness should be believed, you should carefully consider all the testimony and evidence, as well as whether the witness's testimony was affected by other factors. You should consider such factors as:

(1)     the witness's behavior on the stand and way of testifying;
(2)     whether the witness appeared to be telling the truth;
(3)     the witness's opportunity to see or hear the things about which testimony was given;
(4)     the accuracy of the witness' memory;
(5)     whether the witness has a motive not to tell the truth;
(6)     whether the witness has an interest in the outcome of the case;
(7)     whether the witness's testimony was consistent;
(8)     whether other evidence that you believe supported or contradicted the witness's testimony;
(9)     whether and the extent to which the witness's testimony in court differed from the statements made by the witness on any previous occasion; and
(10)    whether the witness has bias or prejudice

You are the sole judge of whether a witness should be believed. You need not believe any witness, even though the testimony is uncontradicted. You may believe all, part, or none of the testimony of any witness.

Maryland Criminal Pattern Jury Instruction 3:10. Thus, utilizing *voir dire* as the vehicle to address the credibility of a child-witness—in the absence of facts about the case and the child's future testimony—is misplaced.

Furthermore, there is good reason to ask *voir dire* questions specifically about police officers and witnesses called by the prosecution or defense, but not for child witnesses. Mostly everyone understands a police officer's basic duties and an officer's role in investigating crimes. Similarly, with adult prosecution witnesses, the State likely is calling them to testify because it would support the State's case before the jury. And, for adult

4

defense witnesses, potential jurors can infer that defense witnesses testify to provide an alibi for the accused, to supply information about the accused's character, or to provide testimony for an acquittal by the jury. Children, on the other hand, are not routinely part of most criminal prosecutions. Juries, thus, come into contact with them as witnesses significantly less frequently than the other three categories of witnesses mentioned and can be fairly covered with the prosecution/defense-witness question. There are good reasons, therefore, that we have thus far sought to extend our limited *voir dire* with respect to individual witnesses only insofar as it addresses integral biases inherent to our justice system, *e.g.*, State and defense witnesses, and pervasive unfair biases expressed in society with historical impact, *e.g.*, race and ethnicity. One's youth is not a similarly pervasive, unfair, or inescapable bias.

My 22 years as a trial court judge has shown me that these types of *voir dire* questions typically are a problem in search of a solution. *Voir dire* questions solely about the age of a child-witness invite *uninformed* speculation about the child's ability to provide credible testimony and leave jurors wanting more information. Thus, prospective jurors, when asked similar questions, often respond by stating that they do not know enough facts about the case to know whether they could or could not be fair. To me, then, these questions highlight the ineffectiveness of asking generalized questions that are not helpful in eliciting bias or prejudgment for which disqualification should be imposed. One need

look no further than this very case where not a single prospective juror stood up when the circuit court asked its reformulated question.[2]

## II
## IMPLICATIONS ON THE FUTURE OF *VOIR DIRE*

The Majority's holding throws into jeopardy Maryland's limited *voir dire*. This case concerns only child-witnesses,[3] but who next will fall within the occupation, status, category, or affiliation of witnesses for which we may require *voir dire* questions upon request? The Majority is silent on this point, and I fear that the reasoning that undergirds this new test likely cannot be contained to just child witnesses, especially given the wide flexibility for the test to apply at the discretion of the trial court. Indeed, the Majority's new test states:

> A court must ask prospective jurors a question designed to uncover bias concerning a certain type of witness when the court reasonably determines that such bias could affect the fairness of the trial. A court reasonably reaches that conclusion if two circumstances are met. *First*, "there must be a qualifying witness, one, who, because of occupation or category, may be favored, or disfavored, simply on [that] basis[.]" *Second*, where the bias relates to a witness's status—such as the status of being a child—the witness's testimony must be important to the case.

Maj. Op. at 17 (alternations in original) (citation omitted).

---

[2] Nor am I suggesting that additional, detailed questions with information about the case should be asked.

[3] Maj. Op. 1–2 ("We conclude that a trial court must ask prospective jurors a question designed to uncover disqualifying bias concerning a *child-witness* where it is reasonable to conclude that: (1) potential jurors may be inclined to believe or not believe the *child's testimony* based solely on the *child's age*; and (2) the child's testimony will be important to the case." (emphases added)).

6

By requiring a question pertaining to the potential bias concerning child-witnesses, and through its test, the Majority opens the door to further "fishing expeditions" against our precedent and "limited" *voir dire*. *See Pearson*, 437 Md. at 356–57. For example, applying the Majority's test to the very same issues discussed in *Pearson* (whether jurors were victims of crime), leads to inconsistent results. *See id.* at 359–64. First, it is, or may be, reasonable to conclude that one's status as the victim of a crime may bias a potential juror for or against a witness who has been convicted of a crime, especially if it was the same type as was suffered by the potential juror. Second, for myriad reasons, often the "important" witnesses in cases are persons who have been accused or convicted of a crime.[4] Thus, per the Majority's test here, the circuit court would be required to entertain what we held to be a fishing expedition in *Pearson*. *See id.* Thus, while the Majority cabins its holding strictly to child witnesses in this case, its proposed test likely can be extrapolated onto *any* facet of a witness. Neither the Majority's test nor its purported guidance is likely

---

[4] In this application, the proposed question here, unlike the ones discussed in *Pearson*, would center its focus on the witness rather than the juror. In *Pearson*, one of the discussed questions was whether "any prospective juror, anyone in any prospective juror's family, or any prospective juror's close personal friend had ever been a juror, witness, victim or defendant in any criminal proceeding." *Pearson*, 437 Md. at 358 (quotation marks and citation omitted). Invariably, the bias sought to be uncovered by this question would have been, or at least included, the bias for or against a witness who was accused or convicted of a crime. Thus, the Majority's test would apply, especially given the discretion the Majority grants to trial courts. Maj. Op. 28 ("[A] trial court is not required to phrase the inquiry concerning child-witness credibility in any particular way.").

7

to "reasonably. . . reveal [specific] cause for disqualification[.]" *Id.* at 357 (second and third alterations in original).[5]

Instead of abrogating *Stewart* and holding that child-witnesses have a special status or that they belong in a "category" that merits additional questioning during *voir dire*, we should consider augmenting the guidance on credibility that we provide in our jury instructions (quoted above). Amplifying this guidance to include a child-witness's (or witness's) age is more likely to ensure that jurors consider it within the context of the evidence to meet the guarantee of a fair and impartial trial that the Sixth Amendment requires. Jurors informed by the substance of trial testimony can best judge credibility to ensure fairness and impartiality.[6]

---

[5] The Majority's test also raises two critical, yet unanswered, questions. First, when is it "reasonable" to conclude "jurors may be inclined to believe or not believe the child's testimony based solely on the child's age[?]" *Id.* at 29. Second, in this context, what does "important to the case[]" mean? *Id.* The Majority does not define "reasonable" or "important" in this context and offers further confusion by stating that the "trial court may well conclude that it is not necessary to make the same inquiry in a case involving a child witness who is close to the age of majority." *Id.* at 29–30. This test provides little to no guidance to trial courts and will invariably lead to future appeals. This vagueness also demonstrates that the test does not seek to help elucidate *specific* causes of *undue* prejudice as seen in *Langley*, *Bowie*, or *Moore*.

[6] Additionally, it is, in my view, premature to abrogate *Stewart* given that the Standing Committee on Rules of Practice and Procedure is considering changes to the Maryland Rules to inform the intelligent exercise of peremptory challenges in *voir dire*. Those changes may have a better likelihood of addressing the child-witness age issue and preclude juror prejudgment.

**III**
**CONCLUSION**

I would not partially abrogate *Stewart*, thereby broadening Maryland's limited *voir dire*, and would affirm the Appellate Court of Maryland, holding that the trial court did not abuse its discretion when it asked a reformulated version of Petitioner's requested child-witness question.

Justice Hotten has authorized me to state that she joins in this opinion.

IN THE SUPREME COURT

OF MARYLAND

No. 8

September Term, 2023

CHARLES MITCHELL

v.

STATE OF MARYLAND

Fader, C.J.,
Watts,
*Hotten,
Booth,
Biran,
Gould,
Eaves,

JJ.

Dissenting Opinion by Gould, J.

Filed: August 14, 2024

*Hotten, J., now a Senior Justice, participated in the hearing and conference of this case while an active member of this Court. After being recalled pursuant to Md. Const., Art. IV, § 3A, she also participated in the decision and adoption of this opinion.

The process of examining qualified jurors is governed by Maryland Rule 4-312(e)(1):

> The trial judge may permit the parties to conduct an examination of qualified jurors or may conduct the examination after considering questions proposed by the parties. If the judge conducts the examination, the judge may permit the parties to supplement the examination by further inquiry or may submit to the jurors additional questions proposed by the parties.

Under this Rule, responsibility for examining qualified jurors lies with the parties and the court, each with their distinct roles. If a party wants the court to ask the potential jurors a particular question, the party must ask the court to do so. And although we say that the court's decision whether to ask a question is reviewed under an abuse of discretion standard, in practice, there are a class of questions for which, when requested by a party, the court must ask. *See, e.g.*, *Langley v. State*, 281 Md. 337, 349 (1977) (holding that it was error for the court to fail to ask a question regarding juror bias for or against police officer testimony); *Hernandez v. State*, 357 Md. 204, 232 (1999) (holding that the court will ordinarily be required to propound a question regarding bias against an accused's race, ethnicity, or cultural heritage); *Casey v. Roman Catholic Archbishop of Balt.*, 217 Md. 595, 607 (1958) (holding that parties are entitled to ask questions regarding religious bias).

Today, the Majority adds another to the list of non-discretionary questions: those designed to "uncover disqualifying bias concerning a child-witness where it is reasonable to conclude that: (1) potential jurors may be inclined to believe or not believe the child's testimony based solely on the child's age; and (2) the child's testimony will be important to the case." Maj. Op. at 1-2. I do not take issue with this new rule per se. Rather, I disagree

with its application here because, in my view, it shifts too much of the responsibility to the court for framing an appropriate question.

In a single inquiry, defense counsel proposed what was, in fact, a two-part question:

Do you have any concerns about a child testifying? Does anyone not believe that a child is capable of lying about a serious crime like this?

After the State objected, defense counsel explained that some people believe that if a child makes an accusation such as the one in this case, there must be some truth to it. In response, the court told defense counsel that it would ask the first part but not the second part. Instead of explaining to the court why the first part did not adequately address the specific bias Mr. Mitchell sought to uncover, defense counsel responded "Okay" to the court's ruling and then moved on. At that point, the trial judge had no reason to believe that defense counsel was concerned that the first part of the question was not adequate for the intended task.

During voir dire, when the court asked the potential jurors if they had "any concerns about a child testifying," none answered affirmatively. At the conclusion of voir dire, the court asked the parties if they wanted the court to ask any other questions. Defense counsel neither requested additional questions nor expressed dissatisfaction or concerns with the questions asked. Again, the court had no reason to believe that defense counsel was concerned that the questions posed to the prospective jurors were insufficient. Under these circumstances, I would hold that the trial court did not abuse its discretion by not taking it upon itself to re-word the second part of the question.

I therefore respectfully dissent.